## Tugboat Indian Company, Appellant, *v.* A/S Ivarans Rederi et al.

16

Argued January 18, 1939.   Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*S. B. Fortenbaugh, Jr.,* with him *Shields, Clark, Brown & McCown,* for appellant.

*Leslie C. Krusen,* of *Krusen, Evans & Shaw,* and *Edwin Longcope,* for appellees.

OPINION BY MR. JUSTICE STERN, March 22, 1939:

For an understanding of the legal questions here involved it is not necessary to give a detailed account of the accident which was the forerunner of the present litigation.   Suffice it to say that the S.S. "Tercero," coming up the Delaware River to Philadelphia, arrived abreast of the pier where it was to be docked, and a spring line was thrown out from the forecastle head and fastened to a cleat on the dock.   Because of packed ice in the river the ship could not get nearer to the pier than 15 to 20 feet.   The "Indian," which was one of two tugboats assisting in the docking operation, received orders from the bridge of the "Tercero" to back in between the side of the ship and the pier, in order, by the action of its propeller, to churn out the ice.   While this maneuver was being executed the spring line for some reason became slack, thereby interfering with the progress of the "In-

dian," and, upon an order which emanated either from the captain of the "Indian" or from the bridge of the steamship,—the testimony on this point is not clear,—the slack was taken up by heaving the line over a metal mooring post on the pier some forty feet distant from the cleat. Edward E. Barnes, the pier superintendent of the company to which the cargo of the "Tercero" was consigned, was standing on the dock between the spring line and the tug when, probably because of the pressure of the ice pushing the bow of the steamship away from the pier, the line suddenly became taut and, being considerably higher at the vessel than at the cleat end, whipped over the top of the mooring post, struck Barnes in the back and catapulted him onto the deck of the "Indian," causing him severe injuries.

Barnes brought an action in tort for damages against A/S Ivarans Rederi as the alleged owner, and Moore & McCormack, Inc., as the charterer of the "Tercero," and also against Tugboat Indian Company as the alleged owner and operator of the tugboat, and Henry J. Wolfinger, the linesman whose employees took the line on the dock and placed it over the cleat. No service was obtained against A/S Ivarans Rederi. The court granted a nonsuit as to Moore & McCormack, Inc. Tugboat Indian Company also asked for a nonsuit but the motion was refused. Being apprehensive as to the amount of damages which the jury might award against it, Tugboat Indian Company thereupon settled with Barnes by paying him $2,500, taking from him a release and an assignment of his rights against the S.S. "Tercero," its owners, underwriters and charterers.

Upon the commencement of the action by Barnes, counsel for Tugboat Indian Company wrote letters to A/S Ivarans Rederi and Moore & McCormack, Inc., demanding that they undertake the defense of the suit, and again wrote to their counsel prior to effecting the settlement with Barnes, giving notice of the proposed payment and expressly reserving right of action by way

of subrogation. Tugboat Indian Company then began the present suit in assumpsit against A/S Ivarans Rederi, Moore & McCormack, Inc.,[1] and Moore & McCormack Co., Inc., to recover the sum of $2,500 paid to Barnes, together with expenses of $1,299.30 incurred in connection with the defense of the Barnes suit. A verdict was rendered by the jury in favor of plaintiff in the amount of $2,500, the item of expenses having been eliminated by the trial judge. Subsequently the court granted a motion for judgment n. o. v. Plaintiff now appeals for a restoration of the verdict.

This is not a suit by one tort-feasor against another for contribution. Neither is it an action based upon Barnes' assignment of his claim, plaintiff evidently realizing that unliquidated damages in tort cannot be assigned: *Patten v. Wilson,* 34 Pa. 299; *Marsh v. Western New York and Pennsylvania Ry. Co.,* 204 Pa. 229, 231; *Sensenig v. Pennsylvania R. R. Co.,* 229 Pa. 168; *Manganiello v. Lewis,* 122 Pa. Superior Ct. 435. Plaintiff framed its case upon the established doctrine that one who pays under coercion or duress the obligation of another is entitled to restitution from the real debtor. In its statement of claim it alleged that the injuries to Barnes were occasioned solely by reason of the negligence of defendants in the way in which they handled the spring line, and were not caused or contributed to by any fault on the part of plaintiff. The statement of claim further alleged that plaintiff settled with Barnes because "fearful of the result of continuing the litigation under the circumstances and realizing the possible burden upon its property and business of an adverse verdict and the costs involved in continued litigation and appeal." Aside from other questions which suggest

---

[1] A nonsuit was entered as to this company and it is not involved in the present proceedings. The other defendant, Moore & McCormack Co., Inc., operated the "Tercero" as agent for the owner.

themselves, it is clear that the facts disclose no coercion within the meaning of the principle upon which plaintiff relies. In order to constitute duress there must be an actual or threatened seizure of a person or his property for the purpose of compelling him to pay money for which he is not liable: *Hospital v. Philadelphia County,* 24 Pa. 229, 231; *Lehigh Coal & Navigation Co. v. Brown,* 100 Pa. 338, 346; *Peebles v. City of Pittsburgh,* 101 Pa. 304, 308; *Harvey v. Girard National Bank,* 119 Pa. 212, 222; *De La Cuesta v. Insurance Co. of North America,* 136 Pa. 62, 78, 79; *Payne v. School District,* 168 Pa. 386, 392; *Schoenfeld v. City of Bradford,* 16 Pa. Superior Ct. 165, 169; *Carhill Petroleum Co. v. Ennis-Bayard Petroleum Co.,* 81 Pa. Superior Ct. 486; *Friedline v. Somerset Borough,* 114 Pa. Superior Ct. 49, 52.

Plaintiff was in no such perilous position. Had it persisted in its defense in the Barnes suit that it was in no way responsible for the accident, and had the jury rendered a verdict in its favor, it would thus have exonerated itself without the necessity of any payment or further action on its part; on the other hand, had a verdict and judgment been rendered against it, this would have established that it was in fact negligent and was therefore not entitled to the relief which it claims on the ground that defendants alone were at fault. Plaintiff did not, however, choose to abide the issue of the Barnes trial, but settled because it entertained the fear that a just verdict might not be reached, although it would have had the complete protection of judicial review, both by the trial court and on appeal, of any verdict rendered. It is significant that in the present action the jury returned a verdict in plaintiff's favor on the ground that it was not negligent; why should it have been supposed that the jury in the Barnes suit would not have come to the same conclusion? It is true that plaintiff was called upon to decide whether to take the chance of a possibly unfavorable verdict or to settle the claim, but this is a situation inherent in all jury trials, and the ne-

cessity of a litigant's exercise of judgment to determine the better policy to pursue is not duress within the meaning of the law. It cannot be said that one is coerced when he has ample opportunity to have his rights litigated and can utilize all the processes of the law to protect himself against an unwarranted demand. If, instead of availing himself of such protection, he chooses to compromise the claim, a payment thus made is not compulsory and does not entitle him to a right of recovery over by way of subrogation or indemnity.

The Pennsylvania cases are unanimous in denying restitution to a person who, contending that another has no valid claim against him, nevertheless makes payment solely because of the threat or the institution of litigation to enforce the demand. "The threat of a distress for rent is not . . . duress, because the party may replevy the goods distrained, and try the question of liability at law: . . . The threat of legal process is not such duress, for the party may plead and make proof, and show that he is not liable": *Hospital v. Philadelphia County*, 24 Pa. 229, 231. "One who is improperly sued for the wrong of another, must secure himself by a defense against that action, and not by subrogation to another": *Borough of West Chester v. Apple*, 35 Pa. 284, 285. "They [the payments] were not made under any duress of person or goods, or under any impending danger of seizure or sale of property. No warrant or other process had been issued directing a levy upon any property, nor had any right been acquired to issue such process. Before such a right could possibly be obtained the plaintiffs were entitled to a day in court, to be heard in opposition to the claim, to have the adjudication of the regularly constituted courts of the commonwealth, including the court of last resort on writ of error. . . . A payment in such circumstances is a voluntary payment": *Peebles v. City of Pittsburgh*, 101 Pa. 304, 308. "The coercion which results from a prosecution in court, in good faith, with full right of appeal, does not consti-

tute legal duress": *Blumenthal v. United States,* 4 Fed. (2d) 808, 809. To the same effect: *Ditman v. Raule,* 134 Pa. 480; *De La Cuesta v. Insurance Company of North America,* 136 Pa. 62, 80, 663, 664; *Shenango Furnace Co. v. Fairfield Township,* 229 Pa. 357, 369, 370.

Confronted by the weakness of its case thus indicated, plaintiff seeks refuge in an alternative theory upon which to base its cause of action, namely, that where a person is secondarily liable for damages to an injured party he may recover indemnity from one primarily responsible, and in such a case it is not a prerequisite that he should have defended an action against him to the very end. On the contrary, he may pay or settle the claim voluntarily and recover against the person from whom he is entitled to indemnity, provided he has given proper notice and can establish that the settlement was fair and reasonable: *Wise Shoes, Inc., v. Blatt,* 107 Pa. Superior Ct. 473, 479. To recover indemnity where there has been such a voluntary payment, however, it must appear that the party paying was *himself legally liable* and could have been compelled to satisfy the claim. Plaintiff, in order to take advantage of this principle, now contends that it was acting as the servant or agent of the owners and operators of the "Tercero" and under their orders, that it was liable for the injuries to Barnes, and that, therefore, it is entitled to reimbursement from defendants as its principal, in accordance with the rule that where a servant is responsible in damages for injuries to a third person caused, not by the negligent manner of performing an act, but as the result of the act itself as directed by the master, recovery over from the master may be had. Assuming, without deciding, that plaintiff was the servant of defendant,[2] or that even if

---

[2] There was a contract between Moore & McCormack Co., Inc., and P. F. Martin, Inc., whereby the latter company agreed to furnish tugs for the former's ships, and this agreement contained the customary pilotage clause to the effect that any officer of a tug

it was acting in the capacity of an independent contractor the same rule would apply, it is sufficient to point out that the pleadings and all proceedings in the case on the part of plaintiff were diametrically opposed to the contention which it now attempts to assert. In its defense to the Barnes suit, in its statement of claim and in the testimony which it presented in the present action, it alleged and sought vigorously to establish that it was not liable to Barnes, but that it was the crew of the "Tercero" who alone caused the accident by their negligence. It presented a point for charge that "there is no evidence in the case of any negligence on the part of the Tugboat Indian Company." The learned trial judge instructed the jury that there could be a verdict for plaintiff only if the "Indian" was blameless in the matter, and the verdict of the jury therefore established that plaintiff was not culpable. It cannot now reverse its position by asserting that it *was* liable to Barnes, and recover over from defendants by obtaining a reinstatement of a verdict which, the way the case was tried, established exactly the contrary.

Judgment affirmed.

---

going on board a steamer to assist in her movement or handling became the servant of the steamer and her owners in respect of all acts done 'and all orders given by him, and that a tug should not be responsible or liable for any claims or damages caused by or resulting from such acts or orders. Effect was given to such a provision in *Sun Oil Co. v. Dalzell Towing Co.*, 287 U. S. 291. See also *Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina*, 261 N. Y. 455, 463; *Moran Towing & Transportation Co. v. Navigazione Libera Triestina*, 92 Fed. (2d) 37. In the present case no officer of the "Indian" went on board the "Tercero." The captain of the "Baltic," which was the other tug engaged in the docking operation, did go on the bridge of the "Tercero" and from there directed all of the participants.