**CONSOLIDATED RAIL CORPORATION**

v.

**YOUNGSTOWN STEEL DOOR COMPANY and the Lamson & Sessions Company.**

**Civ. A. No. 87–7056.**

United States District Court, E.D. Pennsylvania.

Aug. 17, 1988.

William J. McKinley, Jr., Philadelphia, Pa., for plaintiff.

Elissa J. Kahn, Philadelphia, Pa., for defendants.

## MEMORANDUM

NEWCOMER, District Judge.

Presently before me is this action for indemnification brought by Consolidated Rail Corporation against Youngstown Steel Door Company and The Lamson & Sessions Company. A nonjury trial was held on June 20, 1988. After discussing defendants' motion for summary judgment, I

make my findings of fact and conclusions of law.

## I. *Defendants' Motion for Summary Judgment*

At the start of trial, I denied defendants' motion for summary judgment as untimely filed because it was filed on June 13, 1988, one week before the case was called to trial yet approximately three weeks after the case had entered the trial pool. The plaintiff's response to the motion was not yet due at the time of trial. After reconsidering the court's position, I vacated my prior order and ordered that the summary judgment issue be fully briefed forthwith, and I commenced to try the case as well since the parties, counsel and witnesses were all present and prepared to proceed in this very brief trial. I, therefore, must now rule on defendants' motion for summary judgment.

Defendants basically claim that plaintiff is in a no win situation in this case. According to defendants, plaintiff must admit liability in the underlying Vales action or it is deemed to be a volunteer and not entitled to indemnification under *Tugboat Indian Company v. A/S Ivarans Rederi*, 334 Pa. 15, 5 A.2d 153 (1939) (To recover under the principle of indemnity after a voluntary payment has been made in settlement, it must appear that the payor was *himself legally liable* and could have been compelled to satisfy the claim). If, however, plaintiff admits liability, defendants contend that it is barred from recovering under *Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22 (3d Cir.1986) (Manufacturer is not under a duty to indemnify subsequent persons in the chain of distribution where an independent act of negligence also causes the injuries in the underlying action).

Defendants' argument is certainly interesting, but it does not persuade the court to grant the motion for summary judgment. To begin with, plaintiff can deny its liability in the underlying Vales action on the negligence grounds asserted by Vales while it admits liability on the product liability grounds asserted in the crossclaim by the Carnation Company. Plaintiff's settlement was therefore not made by a "volunteer" within the meaning of *Tugboat Indian Company*. In theory, though perhaps not in reality, the settlement funds went from Consolidated Rail Corporation to Carnation and finally to Vales in the underlying action.

Defendants may still succeed on their claim that plaintiff's independent acts of negligence bar a right to indemnification in this case. The resolution of that issue, however, involves the factual determination of causation so it is not appropriate for disposition on a motion for summary judgment where genuine issues of material fact exist.

## II. *Findings of Fact*

1. On August 15, 1978, Willie Vales, an employee of Acme Co., was severely and permanently injured and disabled when he was struck by a boxcar door which fell from its moorings as he attempted to open the door.

2. As a result of injuries sustained by him, Vales received extensive medical, hospital and health care treatment, the cost of which has approximated $50,000, and he has sustained loss of earnings and earning power, actual and projected in the sum of $400,000.

3. Willie Vales commenced an action against Carnation Company and Consolidated Rail Corporation in the Philadelphia Court of Common Pleas in March, 1980. The action was based on negligence.

4. On September 23, 1982, Carnation Company, as one of the defendants, filed a cross-claim against defendant Consolidated Rail Corporation; on both negligence and product liability grounds. On September 28, 1982, Consolidated Rail Corporation, filed an answer to the cross-claim.

5. Throughout the course of the underlying litigation, Consolidated Rail Corporation felt it could successfully defend the allegations of negligence and was prepared to meet the same at trial.

6. As of March, 1985, Consolidated Rail Corporation was forwarded copies of reports prepared by Steven Batterman, P.E.

and Edward H. Wright, Railroad Engineer Consultant, dated March 5, and March 20, respectively by counsel for Carnation in direct support and substantiation of Carnation's claim against Consolidated Rail Corporation on product liability grounds. In September, 1985, Consolidated Rail was forwarded a copy of a report dated September 3, 1985 prepared by American Standard Testing Bureau stating that the principal responsibility for the failure of the boxcar door was due to improper design by Youngstown Steel Door and on Conrail for having operated the boxcar in a defective condition.

7. Upon receipt of the Batterman report, counsel for Consolidated Rail Corporation immediately wrote to Youngstown Steel Door Company on March 11, 1985 advising it as to the nature of the claim against it on product liability grounds, and requesting Youngstown to assume the defense of such claim, as designer, supplier and manufacturer, and to indemnify Consolidated Rail Corporation with respect to any damages against it. Additional notices were sent April 15, 1985, May 30, 1985, July 15, 1985 and September 25, 1985. In addition to such notices, James Huckelberry, Senior Claim Negotiator for Consolidated Rail Corporation, attempted to initiate negotiations with Youngstown without success.

8. The case on behalf of Willie Vales was assigned to trial on September 30, 1985. After extensive negotiations on September 30 and October 1, 1985 the case was settled in the overall sum of $525,000. In connection with the settlement agreement, Consolidated Rail Corporation agreed to contribute the sum of $350,000 because of its potential liability to Carnation Company on Carnation's cross-claim against Consolidated Rail Corporation on product liability grounds and because it was a "target" defendant. By agreement of the parties this sum was paid directly to the claimant Vales. In the transcribed colloquy in open court at the finalization of the settlement agreement, counsel for claimant Vales advised the Court that the apportionment as to Consolidated Rail Corporation was predicated on the design defect feature involving the boxcar door. Counsel for Consolidated Rail Corporation in turn also advised the Court that the receipt of expert evaluations in connection with the products claim motivated Consolidated Rail in making contribution to the settlement. The sums paid by Consolidated Rail Corporation toward overall settlement were clearly predicated on its potential liability to Carnation Company on product liability grounds.

9. A settlement agreement and release dated October 5, 1985 was entered into by Willie Vales, Kemper Insurance Company, the Carnation Company and Consolidated Rail Corporation. The settlement agreement specifically released Consolidated Rail Corporation from any and all claims based on negligence and/or strict liability on behalf of the other parties, and it assigned to Consolidated Rail Corporation all causes of action, including claims for indemnification against third parties, not party to the underlying action.

10. Youngstown Steel Door Company was the designer, manufacturer, assembler and supplier of plug-type boxcar doors and its fixtures and appurtenances used in connection with the construction of X–58 insulated boxcars. The boxcar door with its fixtures and appurtenances involved in the Vales accident was designed, manufactured, assembled and supplied by defendant Youngstown Steel Door Company. It was manufactured and assembled in 1964.

11. The top door track of the boxcar door is so designed as to allow the crank, when in an open position, to line up with the rod clearance openings which allows the crank to become disengaged when the door is in the open position. Further, the roller assembly of the boxcar door in question was not equipped with grease fittings for proper lubrication of the adjustment screw. The design of the roller assembly on the boxcar door in question precluded inspection or visibility of the threads on the adjusting screw since the crank arm itself completely covered the threads. The boxcar door in question was not equipped with a safety arm or third crank which would have held the door in an upright suspended position even had the leveling or adjusting

screw given way below. The structural defect hiding a possible fatigue failure of the adjusting screw combined with the defective design of the top support and lack of a third crank or safety arm caused the boxcar door to fall from its moorings and strike and injure Vales.

12. Auxiliary crank arms were not available at the time the boxcar door was built in 1964 though they were available to the railroad industry beginning in the mid–1970s. Youngstown Steel Door sold Consolidated Rail Corporation auxiliary crank arms for application to older railroad plug doors in the mid–1970s. Consolidated Rail Corporation failed to apply an auxiliary crank arm to the boxcar door involved in the Vales accident.

13. Railroad plug doors require special care in handling to prevent damage and the door getting out of adjustment.

14. The boxcar door must be closed during switching operations to prevent uncontrolled movement and the door hitting the door stops. It is the responsibility of the railroad, Consolidated Rail Corporation, to maintain the boxcar door in a closed position during switching operations. The boxcar door involved in the Vales accident was probably left open during switching operations as is evidenced by the deformed and bent door stops.

15. It is the responsibility of the railroad, Consolidated Rail Corporation, to keep the boxcar doors properly lubricated. Proper lubrication of the boxcar door requires that the roller assembly attached to the leveling screw (crankshaft) be greased to facilitate rotation of the screw. The boxcar door involved in the Vales accident had not been properly maintained and lubricated. The lack of lubrication of the roller assembly and leveling screw caused or contributed to the fracture of the leveling pin.

16. When the leveling screw of the railroad boxcar door is broken, the door will be misaligned. The misalignment of the door due to a broken leveling screw can be seen upon inspection of the door. It is the responsibility of the railroad, Consolidated Rail Corporation, to inspect the railroad cars. Consolidated Rail failed to inspect and detect the misalignment caused by the broken leveling screw of the boxcar door involved in the Vales accident.

17. Notice of the claim advanced by Carnation against Consolidated Rail Corporation as to the product liability grounds provided to Youngstown Steel Door Company was made seven (7) months prior to trial assignment.

18. Consolidated Rail Corporation tendered its complete file to Youngstown for evaluation purposes prior to trial assignment in the Vales action, and subsequent thereto in the instant action.

### III. *Conclusions of Law*

1. When a party settles a claim with an injured individual, then sues the party primarily responsible for the harm for indemnity, the settling party must prove the following: (a) that the settlement was fair and reasonable; (b) that proper notice was given to the party from whom it seeks indemnity; and (c) that the settlement was not voluntary but was made due to the indemnitee's legal liability to satisfy the claim. *Tugboat Indian Company v. A/S Ivarans Rederi,* 334 Pa. 15, 21, 5 A.2d 153, 155 (1939). *See also Philadelphia Electric Co. v. Hercules, Inc.,* 762 F.2d 303 (3rd Cir.1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985).

2. Indemnification is not permitted between two defendants where the party seeking indemnification has been guilty of an independent act of negligence which also is a cause of the underlying injuries. *Rabatin v. Columbus Lines, Inc.,* 790 F.2d 22 (3d Cir.1986); *Wingo v. Celotex Corp.,* 834 F.2d 375 (4th Cir.1987). Indemnity is appropriately sought by a party only secondarily or passively liable while contribution is the appropriate remedy among joint tortfeasors. *Besser Company v. Paco Corporation,* 671 F.Supp. 1010 (M.D.Pa. 1987).

3. The settlement in the underlying action, and the sums paid by Consolidated Rail Corporation in accordance with the settlement agreement, was fair and reasonable.

■ 4. Notice given by Consolidated Rail Corporation to Youngstown Steel Door Company with respect to the cross-claim on product liability grounds asserted by Carnation Company was proper. It was given seven (7) months prior to trial assignment, and after Youngstown was given ample opportunity to review the complete file maintained by Consolidated Rail Corporation and to inspect the boxcar.

Since the cross-claim on behalf of Carnation Company against Consolidated Rail Corporation was predicated on both negligence and product liability allegations, and the product liability claim was neither substantiated nor pressed until March, 1985 and Consolidated Rail Corporation took immediate measures to place Youngstown Steel Door on notice, such notice was timely and proper.

■ 5. The contribution made by Consolidated Rail Corporation toward the overall settlement among the parties was in consideration of its potential liability to Carnation Company with respect to its product liability claim against it. Contribution made therefore by Consolidated Rail Corporation toward the overall settlement was not a voluntary payment but was based on its potential legal liability toward Carnation Company on product liability grounds.

■ 6. Consolidated Rail Corporation, as a party secondarily liable for an accident resulting from product design defect, is entitled to seek indemnification from Youngstown Steel Door Company, as the party primarily liable, absent proof of *active fault* on its part which was a substantial factor in causing the boxcar door to fall from its moorings and strike the claimant Vales.

■ 7. The experts' reports in this case indicate that Consolidated Rail Corporation was actively negligent in the maintenance of the boxcar door. One of these experts is the consulting firm of American Standards Testing Bureau, Inc. (ASTB). ASTB wrote three reports. The first report, dated August 22, 1978, just one week after Mr. Vales' accident details the failure of Con-

solidated Rail Corporation to maintain the railroad boxcar:

> Examination of the two (2) door stops on the car top and bottom revealed that they have been in chronic disrepair and pushed out of position, permitting the rollers to overtravel about 2″ minimum. The upper stop was severely deformed and the lower door stop had two rivets pulled through the post on the cars.... The over-travel of the rollers had resulted in repeated impacts against the roller track terminus. Such repeated blows, when closing the door, have degraded the threaded pin attaching the roller to the pivot arm.... Fractographic analysis of the severed pin revealed that it had sustained multiple cracks and progressively fractured over some period of time.... This condition is consistent with the assembly deterioration due to the state of disrepair described....

The second ASTB report dated July 3, 1984, reiterated Consolidated Rail Corporation's negligence in the maintenance, inspection and use of the railroad boxcar. It stated:

> Microscopic examination of the fractured surface shows quite clearly that there was previous damage to the subject pin thus committing it to a substantially weakened condition when it finally severed at the time of Mr. Vales' injury.... The condition observed clearly indicates that this crack pre-existed the Vales accident for a considerable period of time and that it was detectable prior to the final separation of the pin....
>
> On the basis of our examination of the accident hardware, we reaffirm our previous conclusions that the proximate cause of Mr. Vales' accident was the defective and unserviceable boxcar door system. This car should have been placarded with a bad order card and sent to the shop for repairs.

The last ASTB report not only attempts to implicate defendant Youngstown's design of the door in Mr. Vales' accident but also continues to cite Consolidated Rail Corporation for its own negligence. It concludes:

... the railroad did not employ adequate NDE techniques to ascertain the serviceability of the equipment on regularly scheduled intervals.

Also in evidence is the report of expert Steven Batterman. The Batterman report states that the design of the boxcar door was defective. However, the Batterman report also states that the cause of the accident was both the defective design and the improper maintenance and inspection of the boxcar. It states:

> Based on the information made available to me and the results of my personal analysis and inspections, it is my professional opinion that this accident was caused solely by Conrail placing a defectively designed as well as poorly maintained and inspected railroad car in service.

The expert reports in this case uniformly state that Consolidated Rail Corporation's negligence in the maintenance, inspection and repair of the railroad boxcar door was a proximate cause of Mr. Vales' accident, as well as the defective design of the door.

8. Consolidated Rail Corporation was negligent in failing to properly use, maintain, inspect and repair the railroad boxcar door involved in the Vales accident. It was negligent in failing to properly lubricate the railroad boxcar door and roller assembly; failing to secure the doors to the boxcar during switching operations; failing to add an auxiliary crank arm to the boxcar when it became available; and failing to inspect and detect the fractured leveling screw of the railroad boxcar door.

9. Consolidated Rail Corporation's negligence was a substantial contributing factor in causing Mr. Vales accident.

10. Consolidated Rail Corporation's negligence bars it from recovering indemnity from defendant.

11. Judgment will be entered in favor of defendants Youngstown Steel Door Company and the Lamson and Sessions Company.