### Jones v. Ruhlin Co.
[Cite as 7 AOA 340]

*Case No. 14568*
*Summit County, (9th)*
*Decided October 24, 1990*

*Paul J. Favalon, 1101 One Cascade Plaza, Akron, Ohio 44308 and David Bertsch, 50 S. Main St., P. O. Box 1500, Akron, Ohio 44309, for Plaintiff.*

*Thomas A. Treadon and Joseph F. Scott, 4571 Stephen Circle, N.W., Canton, Ohio 44718, for Defendants.*

BAIRD, J.

This cause comes before the court upon the appeal of defendants/cross-claimants Firestone Tire & Rubber Company (Firestone) and the Ruhlin Company (Ruhlin), and cross-claimant Liberty Mutual Insurance Company (Liberty), from the judgment of the Summit County Court of Common Pleas granting summary judgment in favor of co-defendants Viking Fire & Protection Company (Viking) and Kiser Excavating Company (Kiser) on appellants' cross-claims for indemnity and contribution in plaintiff Alice Marie Jones's action for the wrongful death of her husband.

On July 1, 1985, Gerald Jones, an industrial meter reader employed by the City of Akron Water Department, entered a water meter vault owned by Firestone. Jones died as the result of inhaling gas fumes leaking from a gas pipe near the vault. The water meter vault had been constructed as part of a construction project for which Ruhlin was the general contractor, Viking was the subcontractor on the water meter vault Portion, and Kiser was a subcontractor of Viking. Liberty was the general liability insurer for Ruhlin and Firestone, and it joined the action as a cross-claimant against Viking and Kiser.

Prior to trial, Viking and Kiser reached a settlement with the plaintiff, and obtained a release from all claims against them. After one

day of pretrial hearings, Liberty negotiated a settlement with the plaintiff on behalf of Firestone and Ruhlin. Appellants then sought to pursue their cross-claims against Viking and Kiser, but the trial court dismissed these claims upon motion for summary judgment. Appellants assign three errors on appeal.

### Assignments of Error.

"I. The trial court erred in denying appellants' motions for summary judgment on appellants' crossclaims against appellees for indemnification.

"II. The trial court erred in sustaining appellee's motions for summary judgment on appellants' crossclaims against appellees for indemnification.

"A. Appellees were required to indemnify appellants for all litigation expenses, including monies paid in settlement, absent a finding of negligence on the part of appellants.

"B. There was no evidence before the trial court to make a determination as to appellants' crossclaims for indemnification based on common law principles."

Viking entered into an indemnity agreement with Ruhlin, the relevant portion of which reads:

"The subcontractor shall indemnify the contractor and owner and save them harmless from damage to owner's property and from all claims and judgments for injury or death to persons or property damaged (including costs of litigation and attorney fees) made or obtained against contractor or owner by third persons, including owner's, contractor's and subcontractor's employees and agents, based on injuries to person or property in any manner caused by, incident to, connected with, resulting or arising from the performance of this contract or the presence of the subcontractor's employees and/or agents on owner's premises, but the subcontractor will not be responsible for loss, damage or injury, including death, caused by the negligence of the contractor or owner or its employees."

By the express terms of this provision and by prevailing law, which limits the effect of such indemnity provisions, Firestone and Ruhlin could recover as indemnitees only such funds as they paid by way of judgment or settlement for their secondary or vicarious liability, i.e., on a theory of *respondeat superior*. R.C. 2305.31 reads in part:

"A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the design, planning, construction, alteration, repair, or maintenance of a building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith, pursuant to which contract or agreement the promisee, or its independent contractors, agents or employees has hired the promisor to perform work, purporting to indemnify the promisee, its independent contractors, agents, employees, or indemnities against liability for damages arising out of bodily injury to persons or damage to property initiated or proximately caused by or resulting from the negligence of the promisee, its independent contractors, agents, employees, or indemnities is against public policy and is void. ***."

Where the indemnitee in a construction contract is solely liable, or where liability is concurrent to that of the indemnitor, R.C. 2305.31 prohibits indemnity. *Kendall v. U.S. Dismantling Co.* (1985), 20 Ohio St. 3d 61, paragraph one of the syllabus.

Without rendering its analysis of the Viking-Kiser settlement agreement, the trial court held that any Secondary liability of Firestone and Ruhlin was extinguished by virtue of that settlement, citing *Herron v. Youngstown* (1940), 136 Ohio St. 190. In that case, the Supreme Court of Ohio held that a settlement with the party primarily liable bars the plaintiff from further action against the party secondarily liable. *Id.* at paragraph three of the syllabus.

Subsequent cases have limited the broad scope of this rule to instances there the settlement agreement constitutes a full release of the party primarily liable, where there is an expression of full satisfaction of the claim, and where there is no reservation of rights against other parties. See *Riley v. Cincinnati* (1976), 46 Ohio St. 28 287; *Diamond v. Davis Bakery, Inc.* (1966), 8 Ohio St. 28 38. Thus, where the settlement agreement constitutes less than a full release, where there is an expression of only partial satisfaction of the claim, and where there is clear intent to reserve rights against other parties, such a settlement will not bar further action against nonsettling, secondarily liable parties. *Id.*

If such were the case with the Viking-Kiser settlement, a triable issue might have remained as to appellants' right to indemnity for costs of settlement and attorney's fees, as the Firestone-Ruhlin settlement might arguably have been made on the basis of their secondary liability.[1]

However, there is no claim of error in the trial court's ruling that the Viking-Kiser settlement extinguished Firestone's and Ruhlin's secondary liability. Indeed, the transcript of the pretrial hearing of November 21, 1988, clearly establishes that the parties accepted the trial court's determination that both the primary liability of Viking and Kiser and the secondary liability of Firestone and Ruhlin were no longer at issue, and that the parties understood that the only issues remaining to be resolved at trial were the primary liabilities, if any, of Firestone and Ruhlin. Thus, the only liability that Firestone and Ruhlin could have incurred at this juncture was for their own primary negligence.

Rather than proceeding to a determination of these issues on the merits, Firestone and Ruhlin chose to settle with the plaintiff, presumably without admitting any liability. They then pursued their cross-claims against Viking and Kiser[2] for indemnity, claiming that Viking and Kiser had the burden of proving that Firestone and Ruhlin were themselves negligent in order to avoid having to indemnify them.

On appeal to this court, appellants assert that Viking and Kiser had this burden of proof--without supporting authority--and, argue that the trial court erred in granting summary judgment because Viking and Kiser did not meet this burden, in that they failed to produce any evidence in support. This assertion is without merit, as the burden of proof in such case falls on the party seeking indemnity:

"*** Whether the [indemnitee] settles the claim voluntarily or pays it by force of a judgment does not affect his right to indemnity. But in an action for indemnity after voluntary settlement, the [indemnitee] must prove that he has given proper and timely notice to the one from whom such indemnity is sought, that he was legally liable to respond, and that the settlement made was fair and reasonable." *Globe Indemnity Co. v. Schmitt* (1944), 142 Ohio St. 595, paragraph four of the syllabus. In so holding, the Supreme Court of Ohio followed the general rule expressed in *Tugboat Indian Co. v. A/S Ivarans Rederi* (1939), 334 Pa. 15, 21, 5 A.2d 153, 156:

"*** To recover indemnity where there has been such a voluntary payment, however, it must appear that the party paying was himself legally liable and could have been compelled to satisfy the claim. ***." See also 42 Corpus Juris Secundum (1944), 603-604, Indemnity, Section 25.

Regardless of the burden of proof, it is clear that, as established supra, the only legal liability that Firestone and Ruhlin could have incurred after Viking and Kiser settled was for their own primary negligence. As indemnity for such negligence is barred in a construction context as a matter of law, the trial court properly rendered summary judgment in favor of Viking and Kiser on appellants' cross-claims for indemnity.

*Assignment of Error III.*
"The trial court erred in dismissing appellants' cross-claims for contribution." R.C. 2307.32 provides, in pertinent part:
"***
"(F) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or loss to person or property or the same wrongful death, the following apply:
"***
"(2) The release or covenant discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

Appellants contend that the release given to Viking and Kiser was not obtained "in good faith", because it was an improper "Mary Carter" settlement agreement. This contention is without merit. A "Mary Carter" agreement has four essential features:
"1. The agreeing defendants must remain in the action in the posture of defendants.
"2. The agreement must be kept secret.
"3. The agreeing defendants guarantee to the plaintiff a certain monetary recovery regardless of the outcome of the lawsuit.
"4. The agreeing defendants' liability is decreased in direct proportion to the increase in the nonagreeing defendants' liability."
"***"
*Vermont Union School District No. 21 v. H.P. Cummings Construction Co.* (Vt. 1983), 469 A.2d 742, 748.

The settlement agreement at issue here satisfies the third and fourth of the above requirements. However, the agreement was disclosed to the court and the parties, and Viking and Kiser did not remain in the action as defendants. The major danger with "Mary Carter" agreements lies in the resultant prejudice to the remaining defendants because of nondisclosure, as the settling defendants remain nominal parties to the action while secretly conspiring to aid the plaintiff's case. *Id.* at 749.

As appellants do not even allege such prejudicial factors in the present case, we find that the settlement with Viking and Kiser was not a "Mary Carter" agreement, and that the trial court properly granted summary judgment on appellants' cross-claims for contribution.

Appellants' assignments of error are overruled. Judgment of the trial court is affirmed.

REECE, P.J., and CACIOPPO, J., concur.

---

[1] The settlement agreement between the plaintiff and Firestone and Ruhlin has not been made part of the record on appeal.

[2] Appellants failed to establish how Kiser would be required to indemnify them, as Kiser was not a party to the indemnity agreement.