The estate of Iva Lee Mann appeals the trial court's decision denying it indemnification from appellees and assigns the following errors:
 I. "THE TRIAL COURT ERRED IN HOLDING THAT APPELLANT HAD TO PROVE ITS OWN NEGLIGENCE IN ORDER TO RECOVER UNDER AN INDEMNITY CONTRACT AMOUNT IT PAID TO SETTLE A CLAIM."
 II. "THE TRIAL COURT ERRED IN HOLDING THAT APPELLANT COULD NOT RECOVER UNDER ITS INDEMNITY CONTRACT BECAUSE IT VOLUNTARILY SETTLED THE PLAINTIFF'S CLAIM WHERE THE INDEMNITOR REFUSED TO PARTICIPATE IN SETTLEMENT NEGOTIATIONS."
 III."THE TRIAL COURT ERRED IN REQUIRING EVIDENCE THAT APPELLANT'S SETTLEMENT WAS FAIR AND REASONABLE WHERE THE INDEMNITOR REFUSED TO PARTICIPATE IN SETTLEMENT."
Della and William Griffith and Beverly Sue and Michael Romano rented part of a commercial building from Iva Lee Mann. Della and Beverly Sue are sisters who jointly operated two businesses on the leased premises. Mann used the reserved portion of the building for her own office space, which consisted of two adjoining rooms separated by a swinging door.
Mrs. Romano's adult son, Jammie Blair, was performing odd jobs for her when he walked through Mann's offices to access a garbage dumpster. Upon returning through Mann's offices, he accidently cut his arm on the small glass pane that was in the swinging door. Blair sued appellant to recover for his injuries. Appellant joined the appellees alleging that the lease between the parties required them to indemnify appellant for Blair's claim.
After the trial court denied appellant's motion for summary judgment on the liability issue, appellant settled with Blair. The remaining parties agreed to submit the matter to the trial court upon the stipulated facts found in the appendix to our opinion.
In its first assignment of error, appellant argues that the trial court erred in holding that appellant had to prove its own negligence in order to be entitled to indemnity under the lease. This argument presents us with a question of law which we review de novo.
Indemnity shifts the entire loss from one who has been compelled to make payment to the plaintiff to another who is deemed responsible for reimbursing the full amount. The right to indemnity exists when the relationship between the parties requires one to bear the loss for the other. This right may arise from common law, contract, or in some cases, statutes. Lee Lindahl, Modern Tort Law (Rev.Ed. 1994), Sections 20.01 
20.03. When a judgment is obtained against the indemnitee, an indemnitor who has been given proper notice and an opportunity to defend the action falls in that class of non-parties who are bound by the outcome. Columbus v. Alden E. Stison Assoc.
(1993), 90 Ohio App.3d 608, 614, citing Maryland Cas. Co.v. Frederick Co. (1944), 142 Ohio St. 605. See, generally, 42 Corpus Juris Secundum (1991) 154-158, Indemnity Section 56.
An indemnitee who chooses to settle a claim, rather than litigate it, must prove: (1) that the indemnitee has given proper and timely notice to the party from whom indemnity is sought; (2) that the indemnitee was legally liable to respond to the settled claim; and (3) that the settlement was fair and reasonable. See Globe Indemnity Co. v. Schmitt (1944), 142 Ohio St. 595, paragraph four of the syllabus. This rule applies regardless of what type of indemnity is sought, i.e., whether it arises out of a contract or from common law duty. See, e.g.,Jones v. Bank One, Cincinnati (Dec. 24, 1998), Hamilton App. No. C-980097, unreported; Ozko v. Isaacson Constr. (Nov. 5, 1995), Summit App. No. 17078, unreported; Jones v. Ruhlin
(Oct. 24, 1990), Summit App. No. 14568, unreported.
Thus, in a settlement context under Ohio law, the party seeking indemnification must prove both that the right to indemnification applies to the claim and that such a remedy is appropriate in light of the factual requirements ofGlobe, supra. See Convention Center Inn v. Dow Chemical (1990),70 Ohio App.3d 243, 247. The initial inquiry is essentially a question of law, while the latter is usually a task for the trier of fact. We agree with the appellant that the trial court correctly interpreted the lease to conclude that as a matter of law, the right of indemnification applies here.
Appellant contends that the trial court improperly required it to satisfy the second Globe requirement, i.e. that Mrs. Mann was actually liable to Blair by virtue of her negligence in maintaining the building. In essence appellant contends thatGlobe does not state the law. Appellant is wrong. The general rule of indemnity in the settlement context requires the purported indemnitee to establish by a preponderance of the evidence that the indemnitee was actually liable to the plaintiff. See Globe, supra; 6 Damages in Tort Actions 50-118-22, Indemnity, Section 50.04; 1 Speiser, Krause Gans, The American Law of Torts, (1983) 482-3, Multiple Tort Feasors, Section 3.26.
We are aware of the trend in some jurisdictions to encourage settlements by lowering the indemnitees' burden of proof where the indemnitor has been notified of the underlying suit and given the opportunity to defend and participate in settlement negotiations. See Trim v. Clark (1978), 87 Mich. App. 270 andVallorie v. Drar (W.Va. 1987), 357 S.E.2d 207 where the indemnitee was merely required to show its potential, rather than, actual liability. Under this lesser standard, the indemnitee must demonstrate "that he was exposed to liability which could reasonably be expected to lead to an adverse judgment." Vallorie, paragraph four of the syllabus. TheVallorie court notes that the requirement of actual liability is inconsistent with a public policy which encourages settlements. Parties faced with proving actual negligence will be forced to use the plaintiff and the plaintiff's witnesses to establish their own negligence. Rather than settling before trial, the indemnitee will be better served by forcing the plaintiff to prove his case at trial and then enforcing the judgment against the indemnitor. Id. at 212.
Nonetheless, most Ohio courts have interpreted theGlobe syllabus to require the indemnitee to show that he was legally liable and could have been compelled to satisfy the claim. Ozko, supra; Jones v. Ruhlin, supra. In Globe the indemnitor was put on notice of the suit and asked to defend it. He did not respond to this demand. The indemnitee subsequently negotiated a settlement with the plaintiff and demanded the indemnitor to honor the agreement. Again, the indemnitor ignored the demand. The indemnitee proceeded with the settlement and filed suit against the potential indemnitor. The Ohio Supreme Court ultimately upheld the right to indemnity in a voluntary settlement context where the indemnitee proves 1) proper and timely notice to the indemnitor, 2) "that he was legally liable to respond", and 3) that the settlement was fair and reasonable. Globe, paragraph four of the syllabus. Globe does not speak in terms of potential liability as it citesTugboat Indian Co. v. ALS Ivarans Rederi (1939), 334 Pa. 15,5 A.2d 153. The Pennsylvania Supreme Court's pronouncement of the general rule of indemnity is stated at 334 Pa 15, 21: "* * * To recover indemnity where there has been such a voluntary payment, however, it must appear that the party paying was himself legally liable and could have been compelled to satisfy the claim. * * *"
The policy behind the general rule is consistent with the purpose of indemnity: to shift a real burden, not merely a purported or alleged one. There is no equity in allowing a "volunteer" to shift the burden of an unsubstantiated claim to a third party. Further complicating the issues in this case is the fact that the plaintiff and the potential indemnitor are closely related. Thus, the normal situation where both the indemnitee and indemnitor have the common goal of keeping the plaintiff's damages as low as possible is not present.
Fortunately, we need not resolve the dilemma of which standard of liability is more appropriate for two reasons. First, appellant does not contend the lesser burden of proof applies. Appellant simply and incorrectly argues that it need not address the negligence issue at all. Secondly, regardless of which standard of liability is deemed applicable, the indemnitee must also prove that the settlement is "fair and reasonable". Globe, supra. Vallarie, supra. In looking at the parties' stipulation of facts (See appendix), we agree with the trial court that the appellant did not establish by the preponderance of the evidence that $6000 is a fair and reasonable compensation for plaintiff's injuries. Absent from both the stipulation and the record is any evidence, such as an independent medical examination, deposition testimony from medical experts or plaintiff's medical bills that would allow the trial court to determine the reasonableness of the settlement. The absence of medical evidence or expert testimony makes it impossible to ascertain the nature and severity of plaintiff's injuries. Even assuming both that the less demanding potential liability standard applies and that appellant has satisfied it, appellant has not carried its burden of proof to establish that the settlement was fair and reasonable. The trial court did not err in holding appellant to this task. Appellant chose to settle rather than litigate Blair's claim. In doing so, it assumed the burden of satisfying all three of the Globe requirements. We reject the first assignment of error.
In its second assignment of error, appellant argues that the trial court's decision to deny indemnification was based, at least in part, on the fact that the appellees had no opportunity to participate in the settlement. While the trial court did note in its decision that appellees "did not participate in the settlement and [were] not aware of the setlement (sic) details," this statement is contained in the trial court's summary of the facts of the case.
The trial court's decision also states:
 "The legal question may be framed as follows: Do the Griffiths have a legal obligation to indemnify General Insurance Company for the sum it paid plaintiff on its voluntary settlement as well as its costs and expenses? That question is answered in the negative. General has not proven facts by the preponderance of the evidence as would justify its claim. There is not such evidence that Mann was negligent and the court so finds that there is no evidence that the settlement was fair and reasonable. * * *."
It is clear from the decision as a whole that the trial court based its decision on appellant's failure to prove all of theGlobe elements. We find no merit in appellant's second assignment of error and overrule it.
In its third assignment of error, appellant argues that the trial court erred in requiring it to prove that the settlement was "fair and reasonable." As noted above in our discussion of the first assignment of error, the trial court was correct as a matter of law in assigning this evidentiary burden to the appellant. To the extent that this assignment of error also raises a manifest weight of the evidence question, we remain unpersuaded. We find no merit in appellant's third assignment of error and overrule it.
In sum, we have overruled all of appellant's assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. and Abele, J., Concur in Judgment Opinion:
For the Court
 BY: ________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
 APPENDIX
 IN THE COURT OF COMMON PLEAS LAWRENCE COUNTY, OHIO
CASE NO. PI-96-894
JAMIE BLAIR, PLAINTIFF,
VS:
IVA LEE MANN, c/o CRISTIN STURTZ, EXECUTRIX OF THE ESTATE OF IVA LEE MANN and JOHN DOE, et. al., DEFENDANTS,
VS:
ESTATE OF IVA LEE MANN, THIRD PARTY PLAINTIFF,
VS: STIPULATION OF FACTS
DELLA GRIFFITH, WILLIAM GRIFFITH, BEVERLY SUE ROMANO and MICHAEL ROMANO, THIRD PARTY DEFENDANTS.
Come now the parties, by their respective counsel, and hereby stipulate to the following statement of facts with regard to the above-referenced action for the purposes of adjudicating the Third Party Complaint:
 FACTS
On August 1, 1994, the Third Party Defendants, Della Griffith, William Griffith, Beverly Sue Romano, and Michael Romano, entered into a Lease Agreement with Iva Lee Mann, both individually and Co-Executrix of the Estate of Vernon T. Mann.[1] The Lease Agreement was drafted by counsel for the Estate of Vernon Mann. Under the Lease Agreement, the Third Party Defendants leased a portion of the premises located at 503 South Fourth Street in Ironton, Ohio, more particularly described as follows:
 "That certain building formerly known as Mann Market, located at 318 Park Avenue, Ironton, EXCEPTING AND RESERVING therefrom an area located in the rear of said building which includes the two rooms now occupied by Lessors as an office space. Lessors also authorize Lessees to use two parking spaces located behind said building, adjacent to the alley, as specified by Lessors."
The Third Party Defendants leased the premises to operate two businesses. The Lease specifically excluded two rooms in the rear of the building which were being used by Iva Lee Mann as an office. However, the only direct access that the Third Party Defendants had to the alley and dumpster behind the building was by traveling through the two offices reserved by Iva Lee Mann. She gave the Third Party Defendants permission to go through these offices to access the alley and dumpsters. The door connecting these two offices was a double-hinged swinging door. The top portion of the door contained four panes, three of which were wood and one of which was glass.[2]
On December 27, 1994, the Plaintiff, Jammie Blair, was at the store performing odd jobs for his mother, Beverly Sue Romano. He was instructed to take out the trash. He went through the rear of the building through the two rear offices, using the double-hinged door. On his way back, the Plaintiff accidentally put his hand through the glass pane in the door. He lacerated his right forearm, resulting in a scar approximately four inches long. He also claimed certain neurological residuals as a result of this injury.
Jammie Blair filed suit against the Estate of Iva Lee Mann, alleging negligence and that the premises were in a defective condition. The Estate of Iva Lee Mann filed a Third Party Complaint against the Lessees, Della Griffith, William Griffith, Beverly Sue Romano, and Michael Romano, based upon Paragraph 9 of the Lease which provides as follows:
 "That the Lessees will maintain policies of liability insurance at the Lessees expense insuring against claims arising by reason of the use and occupancy of the premises, wherein the Lessors shall be named as a party protected and shall indemnify and save harmless the Lessors from and against any loss, damage and liability occasioned by, growing out of, or arising, or resulting from any default hereunder of any tortious or negligent act on the part of the Lessees or their agents or employees, or from any other claim arising from the use and occupancy of the premises and from all expenses, costs, or fees incurred in connection with any such claim or liability."
The Third Party Defendants answered the Third Party Complaint and fully participated in the defense and discovery in this matter. A Pretrial Conference was held on April 29, 1998 and a Final Settlement Conference was held on May 20, 1998. On both occasions, the issue of settlement was discussed and on both occasions the Third Party Defendants declined to make any offer or contribute to the settlement of this case. Shortly before the trial date of June 2, 1998, settlement discussions took place between the Plaintiff and Defendant. The Third Party Defendants were aware that some settlement discussions were taking place, but were not aware of the exact details of those discussions. Prior to trial, General Accident Insurance Company paid the sum of $6,000.00 in full and complete settlement of the claims of the Plaintiff.
That the parties agree that they may supplement their Briefs with appropriate Affidavits.
Respectfully submitted,
[1] A true and correct copy of the Lease Agreement is attached and is stipulated as Exhibit A.
[2] The door was constructed substantially similar to the diagram attached as Exhibit B.
HANBURY, POTTER, HALL WINANS, P.S.C.
 BY: _____________________________ John I. Hanbury (#0045861) 1401 Greenup Avenue, Suite 200 P. O. Box 2008 Ashland, KY 41105-2008 Telephone: (606) 329-1919 FAX: (606) 325-4303
 ----------------------------- J. Kick Brown (#0029269) 625 7th Street Portsmouth, OH 45662
 THIS INSTRUMENT OF LEASE WITNESSETH: -----------
THAT WHEREAS, Vernon T. Mann and Iva Lee Mann were Lessors, and Della Griffith and William Griffith, and Beverly Sue Romano and Michael Romano, were Lessees of the real estate hereinafter describe and,
WHEREAS, Vernon T. Mann died on February 28, 1994, and Iva Lee Mann and National City Bank (formerly BancOhio) have been appointed Co-Executors of his estate and are empowered as such fiduciaries to execute a lease of decedent's interest in said real estate and
WHEREAS, all parties desire to renew said lease for the term of one (1) year,
NOW THEREFORE, Iva Lee Mann, individually, and as Co-Executrix of said estate, and National City Bank, as Co-Executor, in consideration of the rents and covenants hereinafter stipulated to be paid and performed by Della Griffith and William Griffith, husband and wife, of Box 217, West Prestonburg, Kentucky 41668, and Beverly Sue Romano and Michael Romano, husband and wife, of 503 So. 4th Street Ironton, Ohio 45638, hereinafter called the Lessees, do hereby rent, demise, let and lease unto said Lessees, the following described premises, to-wit:
 That certain building formerly known as Mann Market, located at 318 Park Avenue, Ironton, EXCEPTING AND RESERVING therefrom, an area located in the rear of said building which includes the two rooms now' occupied by Lessors as an office space. Lessors also authorize Lessees to use two parking spaces located behind said building, adjacent to the alley, as specified by Lessors.
To Have and To Hold the same for and during the term of one (1) year commencing on July 1, 1994, and terminating on June 30, 1995.
Yielding and paying therefor during the term aforesaid, the sum of Three Thousand Dollars ($3,000.00), payable as follows: Said rent shall be payable in monthly installments of $250.00, which shall be payable in advance on the first day of each and every calendar month commencing July 1, 1994, and thereafter during the entire term thereof.
The Lessees have paid the sum of Two Hundred Fifty Dollars ($250.00) damage deposit, as provided by a prior lease which expired June 30, 1994. The damage deposit shall be retained by the Lessors and shall be available for use by the Lessors to repair or replace any damage done by the act or omission of the Lessees or their agents or authorized licensees, and also for any delinquencies in the payment of those sums due herein. All sums payable herein shall be payable at the home of the Lessor, Iva Lee Mann, in South Point, Ohio, or at such other places as shall be designated by the Lessors from time to time.
And the Lessees do hereby covenant and agree with the Lessors as follows, to-wit:
1. That the Lessees will pay said rent at the times and place and in the manner aforesaid.
2. That the Lessees will pay all charges and bills for telephone, gas, electric service and all other utilities and charges created by reason of the use of said premises, except water service, promptly when due. Lessees will cause the services which are payable herein by Lessees to be placed in their name. Water service will be maintained in the name of the Lessors and will be paid by the Lessors and Lessees in equal shares. The Lessees shall promptly pay to the Lessors one-half of the water bill upon presentation to them by the Lessors.
3. That the Lessees will use and occupy the premises in a careful, safe and proper manner; will carefully control all heating and electrical appliances, keep all sewer connections free from obstructions and that all property of the Lessees in said building shall be at the sole risk of the Lessees.
 4. __________________________ DELLA GRIFFITH LESSEE
 5. __________________________ WILLIAM GRIFFITH, LESSEE
 6. __________________________ BEVERLY SUE ROMANO, LESSEE
 7. __________________________ MICHAEL ROMANO, LESSEE
STATE OF OHIO, COUNTY OF LAWRENCE, ss:
Before me, a Notary Public, in and for said county and state, personally appeared Iva Lee Mann, Co-Executrix of the Estate of Vernon T. Mann, Iva Lee Mann, individually, as Lessors, and Della Griffith, William Griffith, Beverly Sue Romano, and Michael Romano, as Lessees, who each acknowledged to have signed the foregoing lease and that the execution thereof was their free and voluntary act and deed.
Dated at Ironton, Ohio, this 1st day of August, 1994.
 ____________________________ Notary Public
STATE OF OHIO, COUNTY OF FRANKLIN, ss:
On this 12 day of August, 1994, before me, a Notary Public, in and for the above county and state, personally appeared __________, who acknowledged himself to be the __________ of National City Bank, a corporation, and that he, as such officer, being authorized so to do, executed the foregoing lease by signing the deed of such officer.
 ------------------------------ Notary Public
STATE OF KENTUCKY, COUNTY OF FLOYD, SS:
Before me, a Notary Public, in and for said county and state, personally appeared William Griffith, as Lessee, who acknowledged he signed the foregoing lease and that the execution thereof was his free and voluntary act and deed.
Dated this 20th day of August, 1994.
 ----------------------------- Notary Public
[EDITORS' NOTE: DRAWINGS IS ELECTRONICALLY NON-TRANSFERRABLE.]