

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-1-2006

# Natl Fuel Gas Co v. Equimeter Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1901

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Natl Fuel Gas Co v. Equimeter Inc" (2006). *2006 Decisions.* Paper 1493.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1493

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-1901

———

NATIONAL FUEL GAS COMPANY,
                                             Appellant
                    v.

EQUIMETER, INC.

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cv-00188J)
District Judge: Honorable Sean J. McLaughlin

———

Submitted Under Third Circuit LAR 34.1(a)
February 28, 2006

Before: SLOVITER, FUENTES, Circuit Judges, and BRODY,[*] District Judge

(Filed March 1, 2006)

OPINION

———

---

[*] Hon. Anita B. Brody, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

SLOVITER, Circuit Judge.

Plaintiff National Fuel Gas Company appeals from the District Court's Order granting Defendant Equimeter, Inc.'s Motion for Summary Judgment.

I.

On August 19, 2003, National Fuel Gas Company ("National Fuel") filed this suit against Equimeter, alleging that Equimeter "violated the warranty of merchantability and the implied warranty of fitness for a particular purpose" in the design and manufacture of its 257S safety valve. National Fuel had purchased and installed 219 safety valves manufactured by Equimeter.

One of the safety valves that National Fuel had purchased from Equimeter failed on January 26, 1994, causing a natural gas explosion that resulted in substantial property damage and personal injuries. Theresa Foster, who was injured in that explosion, sued numerous defendants, including National Fuel and Equimeter. National Fuel filed a third-party complaint against Equimeter, and the issue of whether the safety valve was defective was ultimately submitted to a jury by special interrogatory. The jury found that the "safety relief valve was defective at the time it left control of Defendant Equimeter, Inc." This finding was subsequently affirmed by a district court and this court in Foster v. Nat'l Fuel Gas Co., 316 F.3d 424 (3d Cir. 2002).

National Fuel alleges that as a result of the jury's finding in the Foster case, it felt compelled both "by law and conscience" to replace all 219 safety valves located in its system. It thereafter instituted this suit against Equimeter to recover its cost of replacing

2

the safety valves.

Equimeter filed a motion for summary judgment, asserting that National Fuel's claims are for breach of warranty and are barred by the four-year statute of limitations applicable to such claims. National Fuel responded that the four-year statute of limitations is inapplicable because its claims are based on indemnification and strict liability. The District Court granted Equimeter's motion for summary judgment because of the four-year statute of limitations for breach of warranty. The District Court noted that 13 Pa. Cons. Stat. § 2725 provides that:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

13 Pa. Cons. Stat. § 2725(b).

The District Court also granted Equimeter's motion for summary judgment with regard to National Fuel's claims for indemnity and strict liability, notwithstanding National Fuel's failure to allege these claims in the complaint. The District Court noted that "[u]nder Pennsylvania law, the right to indemnity 'enures to a person who, without fault on his own part, has been compelled, by reason of some legal obligation to pay damages occasioned by the negligence of another.'" (App. at 87 (citing <u>Burbage v. Boiler Eng'g & Supply Co.</u>, 249 A.2d 563, 567 (Pa. 1969)). The court continued, "In this case, [National Fuel] has not paid damages to any third party as a result of any defect in the 219

3

Safety Valves it replaced in its system after the jury's finding in the <u>Foster</u> case." App. at 87.

The District Court also rejected National Fuel's strict liability claims for the cost of replacement of the other purportedly defective safety valves and the repair of other adjacent property. The District Court found this damage theory unavailing because National Fuel had failed to show that this property was damaged.

## II.

The District Court had jurisdiction of this action pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We exercise plenary review over a district court's grant of summary judgment and apply the same standard as the district court; i.e., whether there are any genuine issues of material fact such that a reasonable jury could return a verdict for the plaintiffs. . . . We are required to review the record and draw inferences in a light most favorable to the non-moving party, . . . yet the non-moving party must provide admissible evidence containing specific facts showing that there is a genuine issue for trial." <u>Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare</u>, 402 F.3d 374, 379 (3d Cir. 2005) (internal quotations and citations omitted).

<u>Breach of Warranty</u>

National Fuel's complaint alleges that "Equimeter's design, manufacture and sale of the defective 257S safety relief valves violated the warranty of merchantability and the implied warranty of fitness for particular purpose." App. at 8. Insofar as this is a claim for breach of warranty of merchantability and implied warranty of fitness for a particular

4

fitness, the District Court correctly applied the four-year statute of limitations to grant Equimeter's motion for summary judgment.  See Ranker v. Skyline Corp., 493 A.2d 706, 708 (Pa. Super. Ct. 1985).

Indemnification and Strict Liability

Equimeter contends that because National Fuel failed to mention indemnification in its initial complaint, the District Court had no need to address National Fuel's claims based on indemnity and strict liability.  However, Equimeter has not argued that it would be prejudiced by consideration of the indemnity or strict liability claims, which are based on the same facts as the claims for breach of warranty.  See Titanium Metals Corp. v. Elkem Mgmt., 87 F. Supp. 2d 429, 431 n.6 (W.D. Pa. 1998) (considering indemnity claim raised for the first time after close of discovery where defendant was "on full notice of the claims asserted against it and this amendment would not change the character of the case against it" ).  Therefore, we will address these claims.

The Pennsylvania Supreme Court has stated that the right to indemnity "enures to a person who, without active fault on his own part, has been compelled by reason of some legal obligation to pay damages occasioned by the negligence of another." Burbage, 249 A.2d at 567.  The District Court stated that though National Fuel "had a duty to investigate the safety of its pipelines to ensure that the other Safety Valves in its system were not defective" because of the jury's verdict in Foster, "no legal liability to automatically replace the Safety Valves arose as a result of the Foster jury's finding." App. at 90-91.

5

National Fuel contends that it did have a legal obligation to replace all of the valves, but it cites to no order or precedent imposing such an obligation. Because the duty to indemnify arises from a "legal obligation to pay damages," National Fuel must prove a legal duty to replace all of its valves and liability for failure to do so in order to claim indemnity. In Phila. Elec. Co. v. Hercules, Inc., 762 F.2d 303 (3d Cir.1985), the plaintiff, "[u]nder a threat of legal action . . . pursuant to the Pennsylvania Clear Streams Law, . . . negotiated and carried out a plan to clean up the Chester site." Id. at 316-17. This court, quoting Tugboat Indian Co. v. A/S Ivarans Rederi, 5 A.2d 153, 156 (Pa. 1939), stated that "To recover indemnity where there has been . . . a voluntary payment, . . . it must appear that the party paying was *himself legally liable* and could have been compelled to satisfy the claim." 762 F.2d at 317. Because Philadelphia Electric Co. had failed to prove any such legal liability, we refused to award damages based on Philadelphia Electric Co.'s indemnification theory. This case is no different.

As for the strict products liability claim, we agree with the District Court that National Fuel cannot recover under a products liability theory for self-inflicted damages that it caused to its own property in the course of replacing an allegedly defective product.

6

For the above reasons, we will affirm the District Court's grant of summary judgment to Equimeter.