615 A.2d 372

**KEMPER NATIONAL P & C COMPANIES and American Motorists Insurance Company as Subrogees of Rick Boyd and U.S. West Information Systems Inc., Appellants**

v.

**Kevin C. SMITH, D.C. and Kathy O. Smith, D.C. and the Ashton Village Chiropractic Health Center.**

Superior Court of Pennsylvania.

Argued June 17, 1992.

Filed Oct. 20, 1992.

Leslie Martinelli–Cyr, Philadelphia, for appellants.

Alan S. Gold, Jenkintown, for appellees.

Before ROWLEY, President Judge, and HUDOCK and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the order of the lower court which sustained appellees' preliminary objections in the nature of a demurrer and dismissed appellants' complaint.

Before proceeding to address the issues raised by appellant, it is necessary to recount the relevant facts of this case. Craig Garsed and Rick Boyd, both residents of Arizona, were involved in an automobile accident on October 30, 1986 near Phoenix, Arizona. At the time of the collision, Mr. Boyd was employed by U.S. West Information Systems, Inc. and was insured under policies provided by appellants, Kemper National P & C Companies and American Motorists Insurance. Mr. Garsed sustained neck and back pain as a result of the accident and was treated by an Arizona chiropractor, Dr. Jeffrey Lowy, for these injuries. Mr. Garsed planned a trip to Philadelphia, Pennsylvania in December, 1986 and apprised Dr. Lowy of this event. Dr. Lowy advised Mr. Garsed that he

should seek chiropractic treatment if he experienced pain while on vacation. Mr. Garsed heeded this advice and sought treatment from appellees, Kevin Smith, D.C., Kathy Smith, D.C. and/or the Ashton Village Chiropractic Health Center in Phil·delphia. After receiving chiropractic treatment from appellees, Mr. Garsed suffered a stroke that has left him permanently disabled.

Mr. Garsed instituted suit against Rick Boyd for all of his injuries, including those allegedly caused by appellees, in December, 1987. Appellants entered into a structured settlement agreement and release with Mr. and Mrs. Garsed in 1990.[1] The agreement provides that the Garseds will receive an immediate payment of $345,000.00 and periodic payments until October 1, 2015. In exchange for these payments, the Garseds completely released Mr. Boyd and appellants from all past, present and future claims attributable to the accident.[2] The agreement additionally provides that appellants reserved any rights of contribution and/or indemnity which they may have against appellees.

Appellants instituted suit against appellees on July 1, 1991 pursuant to which they sought contribution and/or indemnity for that portion of the Garseds' injuries which were allegedly caused by appellees. Appellees filed preliminary objections in the nature of a demurrer. In response to appellees' objections, appellants expressly indicated that the contribution claims were withdrawn. See Brief of Appellants in Opposition to Preliminary Objections of Appellees, at 3. Appellees' preliminary objections were sustained by the trial court which directed that the complaint be dismissed.[3] This timely appeal followed.

1. This agreement was executed in Arizona and provides that it is to be construed in accordance with Arizona law. This provision is not binding on appellees, who were not parties to the agreement, and Arizona law has no application to these proceedings.

2. However, the agreement does not expressly state that the Garseds' released appellees or that appellees' liability was extinguished.

3. The trial court granted appellees' preliminary objections and dismissed the complaint. Upon further reflection, however, the trial court

Appellants present the following questions for review: (1) whether an insurer, who is a subrogee of the original tortfeasor and who settles with the injured plaintiff for all injuries arising out of an accident, is entitled to maintain an action for indemnification from a second or successive tortfeasor whose actions allegedly aggravated or caused additional harm to the injured plaintiff; and (2) whether appellees waived additional objections to the complaint which were raised in their reply brief but which were not set forth in the preliminary objections. For the reasons set forth below, we affirm the order of the lower court.

In reviewing the trial court's grant of preliminary objections in the nature of a demurrer,

[a]ll material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for [the purpose of this review.] The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick,* 526 Pa. 541, 547, 587 A.2d 1346, 1349 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991) (citations omitted). *Accord Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 244, 465 A.2d 1231, 1232–1233 (1983).

Appellants contend that they are entitled to indemnification from appellees. We disagree. As explained by our Supreme Court:

'There is ... a fundamental difference between indemnity and contribution. The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. *It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another and for*

concluded that it erred and has drafted an opinion explaining why its prior decision should be reversed.

*which he himself is only secondarily liable.* The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence. . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. Secondary liability exists, for example, where there is a relation of employer and employee, or principal and agent. . . . Without multiplying instances, . . . *the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only,* being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. . . .' Thus, the rule is that where one's *active* negligence has been established in a prior action, and the record of that litigation is introduced in the present action for indemnity, indemnity is not available if the claimant's active fault has been established in the prior action.

*Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. at 250–251, 465 A.2d at 1236, *quoting Builders Supply Co. v. McCabe,* 366 Pa. 322, 325–328, 77 A.2d 368, 370, 371 (1951) (emphasis in original). Further:

Unlike comparative negligence and contribution, the common law right of indemnity is not a fault sharing mechanism between one who was predominantly responsible for an accident and one whose negligence was relatively minor. Rather, it is a fault shifting mechanism, operable only when a defendant who has been liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss.

*Walton v. Avco Corporation,* 530 Pa. 568, 579, 610 A.2d 454, 460 (1992) (emphasis omitted), *quoting Sirianni v. Nugent Brothers, Inc.,* 509 Pa. 564, 570–571, 506 A.2d 868, 871 (1986).

We will evaluate appellants' arguments and the decision of the lower court in accordance with the above principles.

Appellants initially argue that they have set forth a cause of action for indemnity against appellees because they were compelled, by operation of law, to pay for that portion of the Garseds' injuries which were allegedly attributable to appellees. For support, appellants refer us to the rule set forth in the Restatement (Second) of Torts § 457 (1965) pursuant to which a negligent actor who is held liable for another's bodily injury will also be deemed responsible for any additional bodily harm which results from the normal efforts of third parties to treat the other's injury, regardless of whether the third parties' acts are done in a proper or negligent manner. *See Corbett v. Weisband,* 380 Pa.Super. 292, 319, 551 A.2d 1059, 1072 (1988), *allocatur denied,* 524 Pa. 607, 569 A.2d 1367 (1989) and 524 Pa. 620, 571 A.2d 383 (1989); *Embrey v. Borough of West Mifflin,* 257 Pa.Super. 168, 175, 390 A.2d 765, 769 (1978); *Lasprogata v. Qualls,* 263 Pa.Super. 174, 180, 397 A.2d 803, 806 (1979) and the cases cited therein (which note that Pennsylvania has followed the Restatement rule). Appellants thus urge us to construe § 457 as a positive rule of law.

As applied in the context of an indemnity action, liability imposed pursuant to a positive rule of law suggests that a defendant is deemed responsible because of his or her relationship, not because of any actual negligence. For example, principals may be held liable for the acts of their agents, employers for the acts of their employees, suppliers for the acts of the manufacturers, municipalities for the acts of landowners in failing to keep their property safe, etc. *See Builders' Supply Co. v. McCabe, supra* (citing examples). § 457 of the Restatement, however, does not impose liability merely because of the original tortfeasor's status or relationship. Rather, the comments make clear that liability is imposed for any additional injuries caused by the medical providers because it is foreseeable that one who is injured by an original tortfeasor will seek treatment for those injuries. Simply stated, but for the negligent actions of the original tortfeasor, the plaintiff would not have been injured and would not have

been treated by the physician. It is for this reason that liability for any additional harm is imposed under § 457 and not because of any positive rule of law. Thus, appellants' liability for the Garseds' injuries, if any, stemmed from their own negligent conduct and not from a positive rule of law.

More importantly, appellants have failed to state a cause of action for indemnity because they have not been compelled to pay any damages for which they are legally liable. It is well settled that voluntary payments in exchange for the compromise of a claim are not compulsory and do not entitle the paying party to a claim for subrogation or indemnity. *Tugboat Indian Co. v. A/S Ivarans Rederi,* 334 Pa. 15, 20, 5 A.2d 153, 155 (1939). To be entitled to indemnity where there has been a voluntary payment, the paying party must demonstrate that he or she was legally liable and could have been compelled to satisfy the claim. *Id.,* 334 Pa. at 21, 5 A.2d at 156.

As applied here, the certified record reveals that appellants voluntarily settled with the Garseds. However, appellants have not admitted that they were legally liable for the injuries sustained by the Garseds. *See* Appellants' Complaint, Exhibit B (Agreement of Settlement, Compromise and Release), at 2 (in which appellants and their insureds indicated that payment of the Garseds' claim was not to be construed as an admission of liability and that a substantial portion, if not all, of the damages were attributable to appellees). Appellants' complaint similarly contains no averments of liability. Under these circumstances, appellants have not stated a cause of action for indemnity because it does not appear from the pleadings and documents attached thereto they have been compelled to pay a claim for which they were legally liable. *Tugboat Indian Co. v. A/S Ivarans Rederi, supra.*

Even were we to assume that appellants are legally liable for the Garseds' injuries, appellants would not be entitled to indemnification if the injuries were the result of appellants' active or primary negligence. As indicated above, defendants who are actively negligent, as opposed to those

whose negligence is imputed, are precluded from obtaining indemnity. *Vattimo v. Lower Bucks Hospital, Inc.* and *Builders Supply Co. v. McCabe, supra.* Appellants recognize this principle and attempt to avoid it by asserting that their negligent conduct was passive or secondary to that of appellees or imputed by operation of law. As discussed above, liability for the Garseds' injuries is not imputed by operation of law, but is imposed as a direct and proximate result of the tortious acts committed by appellants' insured. Thus, appellants would not be entitled to indemnification from appellees in the event that their insured's active negligence caused the Garseds' injuries.

Despite their tortuous attempts to twist the facts of this case to make it squarely conform to the classic or typical indemnity situation, it is clear that appellants are actually attempting to equitably distribute or apportion responsibility for the Garseds' injuries between themselves and appellees. *See* Appellants' Brief at 10 (where appellants claim that indemnity is a procedure to approximate an equitable division of responsibility between the negligent parties and that such division is sought here) and 12 (where appellants admit that they are attempting to shift to responsibility to appellees for the injuries they allegedly caused to the Garseds); Appellants' Reply Brief at 3 (appellants indicate that they are only seeking to recover for those activities for which appellees were actively at fault). While appellants have not characterized it as such, appellants are essentially seeking to recover a form of contribution from a successive or independent tortfeasor.[4] Recovery of this type has not been expressly adopted in Pennsylvania either by statute or decisional authority. *See* 42 Pa.C.S.A. § 8324(a) (providing for contribution only among

---

4. Because the acts of appellants and appellees are severable as to time and because each allegedly breached a different duty of care owed to Mr. Garsed, appellants and appellees are not joint tortfeasors. *See, e.g., Harka v. Nabati,* 337 Pa.Super. 617, 622–623, 487 A.2d 432, 435 (1985); *Voyles v. Corwin,* 295 Pa.Super. 126, 130–131, 441 A.2d 381, 382 (1982); *Lasprogata v. Qualls,* 263 Pa.Super. 174, 179, 397 A.2d 803, 805 (1979) (all of which hold that an original wrongdoer and a physician who aggravates the existing injury or causes new injury are not joint tortfeasors).

joint tortfeasors) and *Harka v. Nabati*, 337 Pa.Super. 617, 623, 487 A.2d 432, 435 (1985) (providing that the right of contribution exists only between joint tortfeasors). However, several prior decisions of this court have permitted damages among successive or independent tortfeasors to be apportioned. *See, e.g., Corbett v. Weisband*, 380 Pa.Super. at 332–333, 551 A.2d at 1079; *Lasprogata v. Qualls*, 263 Pa.Super. at 179–180, 397 A.2d at 805–806; *Embrey v. Borough of West Mifflin*, 257 Pa.Super. at 185, 390 A.2d at 774.[5] These cases do not support appellants' position and are distinguishable.

*Corbett* involved a plaintiff who had a recurring knee injury. During the course of several years, the plaintiff was respectively treated by three different physicians. The last physician, Dr. Greene, eventually amputated the plaintiff's leg due to her chronic knee problems. The plaintiff subsequently instituted separate actions against each physician. The actions against the first two physicians were later consolidated for trial. At trial, the plaintiff sought to recover from the second physician for all of the damages relating to the subsequent care given by the third physician, *i.e.*, the amputation of her leg. The trial court concluded, as a matter of law, that the second physicians were not liable for the injuries attributable to the third physician because the third physician's negligent conduct constituted a superceding or intervening cause which relieved the second physicians of liability. The trial court further excluded all evidence pertaining to the damages resulting from the third physician's treatment. On appeal, this court reversed each of the trial court's rulings and concluded that the question of whether the third physician's negligence was so highly extraordinary as to constitute a superceding or

---

5. In *Lasprogata v. Qualls*, this court suggested that an original wrongdoer may have the right of indemnity against the treating physician if the original tortfeasor is held liable for damages resulting from both his negligence and that of the physician. *Id.*, 263 Pa.Super. at 178 n. 2, 397 A.2d at 805 n. 2. This statement is dicta and was completely unnecessary and irrelevant to the disposition of the issues before the court. In any event, the statement is erroneous as it conflicts with both prior and subsequent Supreme Court precedent which definitively indicates that an actively negligent tortfeasor is not entitled to indemnity. *See Vattimo v. Lower Bucks Hospital, Inc.* and *Builders Supply Co. v. McCabe, supra.*

intervening cause was a question to be resolved by the jury. We further held that the trial court erred in excluding evidence of the damages attributable to the third physician's treatment. Consequently, the plaintiff was awarded a new trial at which she could introduce evidence of all of her injuries and at which the second physicians would be permitted to introduce additional evidence suggesting that the damages could be apportioned.

In *Lasprogata,* the injured plaintiff settled with the original tortfeasor for only those injuries for which he was responsible. The plaintiff then sued the physician for the injuries which he allegedly caused. On appeal, we concluded that the physician was not entitled to contribution from the original wrongdoer because the injuries caused by each were separate and distinct, and hence could be apportioned. Because the plaintiff had settled with the original tortfeasor and had been compensated for only these injuries, he was entitled to maintain an action against the physician limited to those injuries allegedly due to the physician's negligence.[6]

*Embrey* presented a completely different situation in which the plaintiff brought separate actions against both the original tortfeasors and the medical providers. These actions were consolidated for trial and the jury was instructed to apportion the responsibility for the damages among those defendants found to be negligent. After trial, the medical providers settled with the plaintiff and sought contribution from the original tortfeasors. Contribution was denied. On appeal, this court approved of the trial court's method of apportioning responsibility for the injuries among the defendants and affirmed the denial of contribution.[7]

Unlike *Embrey,* this case does not involve a situation in which the plaintiffs sued both the original tortfeasor and the

---

**6.** We note that virtually identical issues were raised by the physicians in *Harka v. Nabati* and *Voyles v. Corwin.* Thus, these decisions are similarly distinguishable from this case.

**7.** The principles enunciated in *Embrey* have, in effect, been incorporated into Pennsylvania's Comparative Negligence Statute, codified at 42 Pa.C.S.A. § 7102(b), which provides for the apportionment of liability among each of the defendants against whom a plaintiff has recovered.

negligent physician in a single action. This case similarly does not involve a situation like that in *Lasprogata* in which the plaintiff settled and released the original wrongdoer and is now seeking recovery from the physician for those injuries solely attributable to the physician's malpractice. *Corbett* is also distinguishable in that the question of contribution between prior and subsequent tortfeasors was never at issue; rather the only matter in dispute was the extent of the prior tortfeasor's liability to the plaintiff. These decisions therefore do not provide any support or basis for the contribution theory suggested by appellants.

Appellants appear to recognize this fact and refer us to the decisions of other jurisdictions which have permitted an original tortfeasor to recover from a second independent tortfeasor pursuant to a theory of implied or equitable indemnity, subrogation or contribution. *See, e.g., Herrero v. Atkinson,* 227 Cal.App.2d 69, 38 Cal.Rptr. 490 (1964) (indemnity); *Niles v. City of San Rafael,* 42 Cal.App.3d 230, 116 Cal.Rptr. 733 (1974) (followed *Herrero* );[8] *R. & G. Orthopedic Appliances v. Curtin,* 596 A.2d 530 (D.C.App.1991) (indemnity); *Underwriters at Lloyds v. City of Lauderdale Lakes,* 382 So.2d 702 (Fla.1980) (subrogation); *Gertz v. Campbell,* 55 Ill.2d 84, 302 N.E.2d 40 (1973) (indemnity); *Hunt v. Ernzen,* 252 N.W.2d 445 (Iowa 1977) (indemnity); *Gulick v. Kentucky Fried Chicken Manufacturing Corp.,* 73 Mich.App. 746, 252 N.W.2d 540 (1977) (indemnity); *New Milford Board of Education v. Juliano,* 219 N.J.Super. 182, 530 A.2d 43 (1987) (indemnity); *Musco v. Conte,* 22 A.D.2d 121, 254 N.Y.S.2d 589 (1964) (indemnity); *Travelers' Indemnity Co. v. Trowbridge,* 41 Ohio St.2d 11, 321 N.E.2d 787 (1975) (indemnity); *Radford–Shelton*

**8.** Although the California court indicated in *Herrero* and *Niles* that the original tortfeasors were entitled to indemnity from the medical providers, it appears that the court actually allowed equitable apportionment of the injuries between the original and subsequent wrongdoers since both had been sued by the injured plaintiffs. *See Herrero v. Atkinson,* 227 Cal.App.2d at 75, 38 Cal.Rptr. at 493–494; *Niles v. City of San Rafael,* 42 Cal.App.3d at 240, 116 Cal.Rptr. at 738. To this extent, the reasoning in *Herrero* and *Niles* is more closely analogous to the apportionment recognized in *Embrey* and the Restatement (Second) of Torts § 434 (1965).

*& Associates Dental Laboratory, Inc. v. St. Francis Hospital, Inc.*, 569 P.2d 506 (Okla.Ct.App.1976) (contribution); *Greene v. Waters*, 260 Wis. 40, 49 N.W.2d 919 (1951) (subrogation). *But see Transcon Lines v. Barnes*, 17 Ariz.App. 428, 498 P.2d 502 (1972) and *Wilson v. Krasnoff*, 560 A.2d 335 (R.I.1989) [9] (which have completely rejected the indemnity/subrogation theory and disallowed recovery on this basis).

We are not persuaded by the authorities in which a right to recovery pursuant to the doctrines of contribution, indemnity or subrogation has been recognized. Nearly all of these cases arose in states which, at the time the cases were decided, lacked statutes which provided for comparative negligence or contribution among tortfeasors. These decisions may thus be construed as an attempt by the courts to provide for the equitable apportionment of liability among multiple tortfeasors. With the exception of the District of Columbia, all of the jurisdictions previously permitting recovery on an indemnity or equivalent theory have enacted statutes or otherwise adopted comparative negligence principles which now provide for the apportionment of liability among all responsible defendants. *See, e.g., Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975) (adopting comparative negligence doctrine); Fla.Stat.Ann. § 768.31 (West 1975); Ill. Ann.Stat. ch. 70, para. 301–302 (Smith–Hurd 1979); Iowa Code Ann. § 668.3 (West 1984); Mich.Comp.Laws Ann. § 600.2925b (West 1974); N.J.Stat.Ann. 2A:15–5.2 (West 1973); N.Y.Civil Practice Law & Rules § 1401 (McKinney 1974); Ohio Rev.Code Ann. § 2307.33 (Anderson 1988); Okla. Stat.Ann. tit. 23, § 13 (West 1979); Wis.Stat.Ann. § 895.045 (West 1931).[10] *See also* Ariz.Rev.Stat.Ann. § 12–2506 C (1988)

---

**9.** *Wilson* is unique in that Rhode Island does not adhere to the rule set forth in § 457 of the Restatement (Second) of Torts, discussed *ante*, at 375. *Wilson*, 560 A.2d at 340. Rhode Island considers subsequent medical malpractice to be an independent intervening cause. *Id.* Thus, an initial tortfeasor is not liable for additional harm caused by subsequent medical malpractice but is only held responsible for the injury caused by his or her own negligence.

**10.** The District of Columbia has not enacted any provisions relating to comparative negligence or contribution among tortfeasors. Thus, common law principles continue to be applied therein. It is also noted that

(which provides for the apportionment of liability among all defendants, even those who are not parties).

Further, in the few cases which have arisen under these statutes, the courts have either disallowed recovery on the basis of indemnity or have held that the legislative enactments have abolished or superceded the previously recognized right to indemnity. *See, e.g., Mayhew Steel Products, Inc. v. Hirschfelder,* 150 Ill.App.3d 328, 103 Ill.Dec. 587, 501 N.E.2d 904 (1986), *appeal denied,* 114 Ill.2d 547, 108 Ill.Dec. 419, 508 N.E.2d 730 (1987) (concluding that the common law right to indemnity was superceded by statute and indemnity was not specifically authorized therein); *American Trust & Savings v. U.S. Fidelity & Guaranty Co.,* 439 N.W.2d 188 (Iowa 1989) (holding that equitable indemnity has been replaced by enactment of Iowa's comparative negligence act); *Teepak, Inc. v. Learned,* 237 Kan. 320, 699 P.2d 35 (1985) (characterizing claim for indemnity against negligent physician as one for contribution and holding that original tortfeasor was not entitled to recover either indemnity or contribution under Kansas' comparative negligence statute); *Joiner v. Diamond M Drilling Co.,* 688 F.2d 256 (5th Cir.1982) (disallowing claim for indemnity, but permitting claim for contribution among successive or independent tortfeasors under Louisiana's contribution statute which permits contribution among successive or independent tortfeasors); *Gruett v. Total Petroleum, Inc.,* 182 Mich.App. 301, 451 N.W.2d 608 (1990), *reversed on other grounds,* 437 Mich. 876, 463 N.W.2d 711 (1990) (only recognizing a limited right to indemnity where a party is free from active fault and there is a special relationship or course of conduct between the indemnitor and indemnitee); *Salonia v. Samsol Homes, Inc.,* 119 A.D.2d 394, 507 N.Y.S.2d 186 (1986)

several of the jurisdictions either adopted comparative negligence or enacted their respective statutes before the decisions permitting equitable indemnity or subrogation were issued. Decisions arising in these jurisdictions primarily cited to existing authority without discussion or consideration of the impact that subsequently enacted comparative negligence statutes had thereon. Other cases, however, merely adopted a new theory without reference or discussion of their own comparative negligence statutes or cases. In the absence of such analysis, we do not find these authorities to be persuasive.

(amendments to New York's comparative negligence contribution law overruled prior caselaw recognizing a claim for indemnity). *But see American Motorcycle Association v. Superior Court,* 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978) (adopting a comparative indemnity theory).

■ Because many of the authorities relied upon by appellants have been affected by the enactment of subsequent statutes, we question the continuing precedential value of these decisions. Moreover, the rights of contribution and apportionment of liability among multiple defendants is a matter which is governed exclusively by statute in Pennsylvania. While some states have attempted to ameliorate the precise problem at issue here by limiting a defendant's liability for those injuries caused solely by his or her own negligence or by permitting the apportionment of liability among all tortfeasors, even those who have not been made parties, Pennsylvania's statute does not so provide. Rather, Pennsylvania only authorizes contribution among joint tortfeasors. Although Pennsylvania's version of the Uniform Contribution Among Tortfeasors Act preserves a common law right of indemnity, *see* 42 Pa.C.S.A. § 8323, the facts of this case do not fall within the classic indemnity relationship which has previously been recognized by our Supreme Court. Because the common law regarding contribution has been replaced by statutory authority which does not recognize a right of contribution among successive or independent tortfeasors, this court is not at liberty to endow appellants with such a right in contravention of that which has been granted by the legislature. To do so would undoubtedly disrupt the legislative scheme. If a new theory of recovery is to be recognized in Pennsylvania, it should come from either our Supreme Court or the legislature.

In view of our disposition of appellants' first issue, we need not address appellants' remaining claim relating to the waiver of additional objections by appellees.[11] In any event, it does

11. Appellees appeared to raise additional grounds in support of their preliminary objections in the nature of a demurrer in a reply memoran-

not appear that the trial court relied upon or even considered appellees' reply memorandum as it was not received by the court until after its order granting the demurrer had been entered.[12] Appellees also have not attempted to rely upon these additional grounds in their appellate brief. Under these circumstances, the question of whether appellees have waived their additional objections is irrelevant.

As a final point, we are compelled to comment upon the arguments raised by the parties relating to the lower court's opinion in which it concluded that the order granting the preliminary objections should be reversed. In support of its decision, the trial court appeared to indicate that the provisions of the settlement agreement could only be given effect by permitting appellants to maintain their action for indemnification. Trial Court Opinion, filed 1/2/92, at 3. Appellees present a complicated argument in response to the trial court's reasoning. According to appellees, the trial court erred because the settlement agreement expressly provides that it is to be construed in accordance with Arizona law. As indicated above, Arizona law did not permit an original tortfeasor to recover indemnity from a physician who aggravated or caused additional injury to the plaintiff. *See Transcon Lines v. Barnes, supra.* Because Arizona law did not recognize the cause of action preserved by appellants in their settlement agreement, appellees believe that appellants could not have reserved a cause of action which they did not possess. Therefore, refusal to permit appellants to proceed on their indemnification claim in Pennsylvania cannot be construed as a failure to give effect to the provisions of the settlement agreement. In response to appellees' argument, appellants simply contend that this claim has been waived. *See* Pa. R.A.P., Rule 302(a), 42 Pa.C.S.A. (providing that issues not

dum of law which they filed in response to appellants' memorandum in support of their opposition to appellees' objections.

12. The Reply Memorandum contains a handwritten notation which appears as follows: "Moot when rec'd (9/30) Order entered on 9/25". The notation is followed by the initials "AWS", the initials of the trial judge who ruled upon the objections.

raised in the lower court are waived and cannot be raised for the first time on appeal).

■ Contrary to appellants' suggestion, appellees argument cannot be considered waived. The trial court sustained their objections and did not draft an opinion explaining its rationale in support of reversal until after an appeal had been filed. Because the ruling was initially favorable to appellees, they would have had no reason to file either a timely motion for reconsideration or an independent appeal. Thus, there was no stage of the lower court proceedings at which appellees could have challenged the trial court's rationale. For this reason, we find that strict compliance with the prohibition relating to matters raised for the first time on appeal is inappropriate under these particular circumstances. *See Cagnoli v. Bonnell,* 531 Pa. 199, ——, 611 A.2d 1194, 1195–96 (1992) (excusing an appellant's failure to raise an issue prior to filing her motion for reconsideration in the trial court where appellant's counsel did not have an opportunity to research and prepare cogent arguments in response to motions which were presented on the morning of trial). *See also* Pa.R.A.P., Rule 105(a), 42 Pa.C.S.A. (providing that the appellate procedural rules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable and that the rules, under certain circumstances may be disregarded in the interests of justice or for other good cause).

■ Although appellees' have not waived their claim, we nevertheless find their reasoning to be partially in error. The settlement agreement does not provide that Arizona law is to govern any subsequent actions for contribution or indemnity which appellants may have had against appellees. Instead, the settlement agreement merely provides that its terms are to be construed in accordance with Arizona law. To the extent that this provision does purport to dictate the law to be applied in any subsequent action for contribution or indemnity, we note that appellees were not parties to the settlement agreement and the choice of law provision could not be enforced against them. Thus, the question of whether appellants could maintain an action in Pennsylvania for indemnifica-

tion is not dependent upon any interpretation of Arizona law or the settlement agreement; rather, appellants' right to recover contribution or indemnity must be evaluated in accordance with Pennsylvania law.

Despite appellees' erroneous suggestion that appellants' claim must be evaluated in accordance with Arizona law, we agree with appellees that the trial court's reasoning was inaccurate. As explained above, the trial court appeared to conclude that it had a duty to give full effect to the provisions of the settlement agreement and that this mandate could not be fulfilled unless appellants were permitted to maintain an action for indemnification. *See* Trial Court Opinion, *supra.*

Contrary to the trial court's conclusion, dismissal of appellants' indemnification action for failure to state a claim upon which relief could be granted is not to be equated with a refusal to give full effect to the terms of the settlement agreement. Appellants' ability to recover contribution and/or indemnity is completely independent of and unrelated to the enforcement of the settlement agreement. In this case, appellants' voluntarily settled with the Garseds, and in doing so, appeared to operate under the mistaken belief that they would be successful in recovering a portion of the settlement from appellees. Appellants' mistaken assumptions regarding their ability to maintain a cause of action for contribution and/or indemnity, do not negate or otherwise affect the terms of the settlement agreement or appellants' responsibilities thereunder.

More importantly, appellants could only have reserved whatever claims for contribution and/or indemnity which may have existed in the jurisdiction in which such actions ultimately would be commenced against appellees. In this case, we have determined that Pennsylvania law does not permit appellants to recover indemnification from appellees. Appellants' attempt to reserve a right to indemnification in the settlement agreement does not change this result. As observed by our Supreme Court, "claiming to reserve a right will not operate to create [that] right." *Walton v. Avco,* 530 Pa. at 582, 610 A.2d at 461. We therefore reject the trial court's suggestion

that the settlement agreement would be rendered meaningless if appellants' were precluded from maintaining an indemnity action against appellees.

Order affirmed.