Dankambary v. FSF Trading Corp.

C.P. of Bucks County, no. 2007-01639-35.

*John E. Salmon* and *Peter W. Baker,* for plaintiff.
*Robert P. Corbin,* for defendant.

BALDI, *J.,* November 23, 2010—

## I. Introduction

FSF Trading Corporation and Banner Smoked Fish, Inc. appeal to the Superior Court of Pennsylvania from this court's August 19, 2010 order denying their motion for summary judgment and granting Penske Truck Leasing Co., L.P.'s motion for summary judgment. We file this opinion pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(a).

## II. Factual and Procedural Background

On March 1, 2007, Daouda Dankambary and his wife, Shauntey Gibbs Dankambary (hereafter "original plaintiffs"), filed a complaint against FSF Trading Corporation and Banner Smoked Fish, Inc. (hereafter "original defendants" or individually as "FSF Trading" and "Banner"). Original plaintiffs' complaint, alleging negligence and loss of consortium, was filed in response to injuries Daouda Dankambary sustained while washing trucks at 3185 Tucker Road in Bensalem, Pennsylvania, property owned by FSF Trading and rented by Banner. Specifically, Daouda Dankambary fell into an uncovered drainage ditch — approximately eighteen (18) inches in diameter — which was normally covered by a metal lid.

Oral arg. 8/16/10 at 12. He suffered significant injuries as a result of this fall.[1]

On September 26, 2008, original defendants filed a joinder complaint against Penske Truck Leasing Company, L.P. (hereafter "Penske"), alleging that Penske should be liable for contribution or indemnification. Org. defs.' Joinder Compl. 3. This allegation stemmed from the fact that Daouda Dankambary was at the Tucker Road facility to wash Penske trucks that Banner had leased from Penske. More specifically, Banner leased trucks from Penske, and in their Vehicle Lease Agreement, Penske agreed to periodically wash the exterior of the leased vehicles. To meet this contractual obligation, Penske hired Fleetwash, a truck washing contractor. Daouda Dankambary was an employee of Fleetwash, and on the evening of May 1, 2006, Daouda Dankambary, in his capacity as Fleetwash employee, went out to the Tucker Road facility to wash the leased vehicles. He then fell and injured himself on the uncovered drainage ditch. All parties agree that Penske and their truck washing contractor had no part in creating or maintaining the hazardous condition that caused Daouda Dankambary's injuries; the drainage ditch remained a hazard due to original defendants' conduct. Oral arg. 8/16/10 at 3;12. In their joinder complaint,

---

1. At oral argument, the injury was described in the following manner:

The court: What was the nature of the defect or whatever supposedly occurred?

Mr. Baker (counsel to original defendants): It was - what appeared to be - we called it a cistern. It was a - on the property there was an open cistern of about 18 inches in diameter that was attached to a sump pump. And normally it had a metal lid on it. It was adjacent to the area where the trucks were washed.

But apparently, on that particular night, there was no metal lid on it....

Mr. Dankambary...stepped into this hole and fell into it, hitting his side on the concrete rim of the cistern, and breaking six ribs.

original defendants alleged that Penske would be liable to them on the basis that Penske breached a vehicle lease agreement by and between Penske and Banner, and/or Penske was negligent for sending Daouda Dankambary to the property to wash the vehicles. Org. defs.' joinder compl. 3. To elaborate, original defendants argued that, under the terms of the lease agreement between Penske and Banner, Penske was to wash the leased trucks at Penske's rental facility, and not at 3185 Tucker Road; thus, Penske breached the lease agreement by washing the trucks at 3185 Tucker Road and breached their duty of care by not informing Fleetwash that their employees were not to wash the trucks at the Tucker Road facility.

Original plaintiffs and original defendant banner eventually settled their dispute for seventy-five thousand dollars ($75,000). Original defendants and Penske continue to litigate original defendants' contribution/indemnification claim. It should be noted that the vehicle lease agreement does not contain a clause addressing contribution or indemnification.

In summary, this action was commenced by Daouda Dankambary in response to his falling into a drainage ditch left uncovered as a result of original defendants' conduct; Original defendants filed suit against Penske in an attempt to shift their losses to Penske. This appeal stems from cross-motions for summary judgment filed by Penske and original defendants: Penske filed a summary judgment motion on April 4, 2010, to which original defendants responded, and original defendants filed a summary judgment motion on May 5, 2010 to which Penske responded. On August 16, 2010, this court heard oral argument on the cross-motions for summary judgment. Following oral argument, the undersigned

carefully reviewed the cross-motions for summary judgment and the briefs submitted by the parties in support and opposition to said motions. The court also took into consideration the statements made by counsel on behalf on their clients at oral argument and considered these statements to be judicial admissions. The undersigned concluded that Penske was entitled to summary judgment, and therefore, by order dated August 19, 2010 and docketed August 24, 2010, the undersigned granted Penske's summary judgment motion and denied original defendants' summary judgment motion.

On September 23, 2010, original defendants timely filed this appeal. Thereafter, on October 15, 2010, plaintiff provided a statement of errors complained of on appeal in accordance with this court's order for same.

III. Statement of Matters Complained of on Appeal

Original defendants have raised four issues on appeal:

1. In denying the summary judgment motion of appellants, and granting the summary judgment motion of appellee, Penske Truck Leasing Company, L.P. ("appellee"), the trial judge ignored the uncontroverted evidence of record which established that the intention of the parties was for Penske to wash Banner's trucks on Penske's premises, and not on Banner's premises.

2. In denying appellants' summary judgment motion, and in granting appellee's summary judgment motion, the trial judge ignored the fact that the contract between the parties contains an integration clause in which both parties explicitly agreed that the entire agreement

between the parties was contained within that document; in reaching his decision, the trial judge looked outside the "four corners" of the document improperly to ascertain the intention of the contracting parties.

3. In denying appellants' summary judgment motion, and in granting appellee's summary judgment motion, the trial judge, in ascertaining the intention of the contracting parties, improperly violated the parol evidence rule and considered matters extrinsic to the contract, where the intentions of the parties was clearly manifest in the contract document itself.

4. In denying appellants' motion for summary judgment, and in granting appellee's motion for summary judgment the trial judge improperly concluded that the breach of contract by Penske was not the proximate cause of any losses suffered by appellants.

## IV. Discussion

### a. *Legal Standard: Summary Judgment*

"A motion for summary judgment may be properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wash. Fed. Say. and Loan Ass'n v. Stein*, 515 A.2d 980, 981 (Pa. Super. 1986). "The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Marks v. Tasman*, 527 Pa. 132, 135, 589 A.2d 205, 206 (Pa. 1991).

Under Pa.R.Civ.P. 1035.3(a):

(a) Except as provided in subdivision (e), the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying

(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or

(2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

b. *Contribution and/or Indemnification Claim*

It should be noted at the outset that neither party briefed, nor discussed at oral argument, the standards for recovery under a contribution or indemnification claim. The focus of the parties' argument was whether Penske breached the vehicle lease agreement it had signed with Banner. While the parties seemed to think that a breach of the vehicle lease agreement would be dispositive, the undersigned concluded that the standards for recovery on a contribution or indemnification claim were relevant to the ultimate resolution of this controversy.

Contribution and indemnification are separate and distinct causes of action. *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368, 370 (Pa. 1951); *Kemper Nat'l P & C Companies v. Smith*, 615 A.2d 372, 374-75 (Pa. Super. 1992). While both are equitable

remedies, contribution operates as a *"fault-sharing* mechanism between two parties responsible for harm," *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 552 F. Supp. 2d 515, 520 (E.D. Pa. 2008 (citing *Kemper,* 615 A.2d at 375), whereas indemnification is as a *"fault shifting* mechanism operable only when a defendant who has been liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." *Sirianni v. Nugent Bros., Inc.,* 509 Pa. 564, 571, 506 A.2d 868, 871 (Pa. 1986).

### i. *Contribution*

In Pennsylvania, there is no common law right to contribution; a right to contribution arises only among joint tortfeasors under the Uniform Contribution Among Joint Tortfeasors Act (UCAJTA), 42 Pa.C.S. §§ 8322-27. *Kemper*, 615 A.2d at 379-80 (Pa. Super. 1992); 42 Pa.C.S. § 8324. Under 42 Pa.C.S. § 8324 ("Right to Contribution"):

(a) General rule.--The right of contribution exists among joint tort-feasors.

(b) Payment required. -- A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

Joint tortfeasors are defined as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa.C.S. § 8322. More specifically, "joint tortfeasors exist where 'two or more persons owe to any other the same duty and by their

common neglect, such other is injured.'" *LaZar v. RUR Indus., Inc.*, 487 A.2d 29, 32 (Pa. Super. 1985) (quoting *Lasprogata v. Qualls*, 397 A.2d 803 (Pa. Super. 1979)); put differently, joint tortfeasors exist when "the tortious conduct of two or more persons causes a single harm which cannot be apportioned." *Capone v. Donovan*, 480 A.2d 1249, 1251 (Pa. Super. 1984). In summary, under the UCAJTA, contribution is recoverable where (1) the parties are joint tortfeasors and (2) one tortfeasor has discharged the common liability by paying more than his pro rata share.

In the case sub judice, Penske and original defendants were not joint tortfeasors, and therefore Penske cannot be liable for contribution. As this is a summary judgment motion, it was incumbent upon original defendants to point to evidence in the record that would show that Penske was a joint tortfeasor. Original defendants have not done this. All parties agreed that Penske did not create or maintain the hazardous condition which caused Daouda Dankambary's injuries; the cover was off the drainage ditch as a result of one or both of original defendants' actions. As Penske is not the landowner and had no control over the drainage ditch, Penske had no duty to maintain the property in a reasonably safe condition or warn against the hazard. *Palange v. City of Phila.*, 640 A.2d 1305, 1308 (Pa. Super. 1994). There is also no indication in the record that Penske was aware of the hazardous condition. Accordingly, this court cannot say that Penske breached any duty to Daouda Dankambary.

Instead of pointing to evidence which would suggest that Penske was a joint tortfeasor, original defendants pointed to language in a contract which supports their

assertion that Penske breached a contractual obligation.[2] Even if the court were to adopt and accept the interpretation of the contract proposed by original defendants, the suggested breach of contract would not make Penske a joint tortfeasor. See *Agere*, 552 F.Supp.2d at 520. A breach of a contractual obligation between two defendants is not a basis for a contribution claim. *Id.* As previously stated, all parties agreed that the dangerous condition (the absence of a metal lid) was the responsibility of the original defendants and not Penske. Penske had no control over the instrumentality that caused plaintiff harm.

### ii. *Indemnification*

To the extent that original defendants assert that Penske is liable to them via contract, original defendants appear to be making an indemnity claim. In other words, original defendants' claim that Penske breached the vehicle lease agreement by sending Fleetwash out to the Tucker Road

---

2. At oral argument, counsel for original defendants stated that his whole case rose and fell on the terms of the vehicle lease agreement. According to counsel, Penske is liable to original defendants for contribution if Penske breached the vehicle lease agreement by sending Daouda Dankambary out to the Tucker Road facility. Specifically, at oral argument, counsel for original defendants says:

Mr. Baker: Our whole argument, Your Honor, is [Daouda Dankambary] shouldn't have been [at the Tucker Road facility] in the first place. And the ones who should have controlled that were the ones who had privity with Fleetwash, which was Penske.

The court: Okay, that's the whole case in a nutshell. Well, is there more? If there is, let me know. It seems to me that really - what you just described was the whole issue. Does Penske become liable for these injuries where a person stepped into a manhole -- an empty manhole because of a contract where they should have sent the person to a different location.

Mr. Baker: Yes, Your Honor

The court: That's the whole case.

Mr. Baker: [Daouda Dankambary] should have never set foot on the property after the date of [sic] the contract was signed.

facility, and by this breach, original defendants suggest that Penske is solely liable for Daouda Dankambary's injuries.

As discussed, indemnification is a *"fault shifting* mechanism operable only when a defendant who has been liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." *Sirianni*, 506 A.2d at 871 (Pa. 1986); City of *Wilkes-Barre v. Kaminski Bros., Inc.*, 804 A.2d 89, 92 (Pa. Cmwlth. 2002) (noting that indemnification "is a common law equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault"); see also, *Builders*, 77 A.2d at 370-71. It *is not* a fault-sharing mechanism; "indeed, there can be no indemnity between parties who each bear responsibility for the wrong." *Kaminski Bros.,* 804 A.2d at 92. In the present case, all parties agree that Penske played no part in creating or maintaining the hazardous condition that existed on original defendants' property. Original defendants' conduct created the hazard that eventually caused Daouda Dankambary's injuries. In light of this, original defendants cannot maintain an indemnity action against Penske.

Thus, for all the above reasons, the undersigned issued the order of August 19, 2010, denying original defendants' motion for summary judgment and granting Penske's summary judgment motion, and now submits that this appeal is without merit.